**DISTRICT OF COLUMBIA, et al., Appellants,**

v.

**PIERCE ASSOCIATES, INC., et al., Appellees.**

**No. 86–375.**

District of Columbia Court of Appeals.

Argued May 6, 1987.
Decided June 11, 1987.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., with whom James R. Murphy, Acting Corp. Counsel, and Charles L. Reischel, Deputy

Corp. Counsel, were on the brief, for appellants.

Jack Rephan, Washington, D.C., with whom Andrew W. Stephenson was on the brief, for appellees.

Before PRYOR, Chief Judge, and NEBEKER, Associate Judge, and PAIR, Senior Judge.

PRYOR, Chief Judge:

Pursuant to a contract with the District of Columbia, appellees Pierce Associates (Pierce) performed construction work on the District of Columbia Convention Center. When the District failed to make timely payment of its final balance due, Pierce brought this action for breach of contract. After the complaint was filed, the District paid the principal of this final payment, but a dispute remained concerning the amount of interest the District owed Pierce in compensation for the loss of the use of the funds during the period in which the final payment was withheld. Pierce moved for summary judgment, arguing that D.C. Code § 15–109 (1981) permitted the trial court to exercise its discretionary authority to award compensatory prejudgment interest as an element of damages, and thereby sought an interest rate of 15.99% (representing Pierce's stated rate of return during the contested period). The District filed a cross-motion for summary judgment, arguing that the rate of interest was limited by D.C. Code § 28–3302 (a) (1981 & 1986 Supp.) to 6%. The trial court granted Pierce's motion for summary judgment, setting the rate at 15.99% and calculating the interest as running from the date which it determined Pierce had substantially performed its duties under the contract, April 1, 1983, until the date of payment by the District, September 25, 1985.

The District appeals arguing (1) that, as a matter of law, prejudgment interest for liquidated debts or damages in breach of contract actions is, in the absence of an express contractual provision, limited by D.C. Code § 28–3302(a) (1981 & 1986 Supp.) to 6%; (2) that even if that limit does not apply, summary judgment was inappropriate because a genuine issue of material fact existed concerning the dates on which the interest began to accrue. We conclude that the trial court erred in its calculation of the rate of interest, and hold that an award of prejudgment interest, in the absence of an express contractual provision, must be limited to the 6% rate in accord with D.C. Code § 28–3302(a).[1] We also conclude that the court erred in granting summary judgment based on its determination that the District's final payment was due upon substantial performance by Pierce, not upon the dates of final acceptance by the District of its work, as was provided in the contract. Material issues of fact remain concerning the dates of final acceptance by the District. We must remand the case to the trial court to determine the dates of the District's final acceptance of the debt, with instructions that the award of interest shall begin to run from these dates in accord with D.C. Code § 15–108 (1981), and shall be limited to the 6% statutory rate expressed in § 28–3302(a).

I

Most of the facts are not in dispute. Pierce Associates is the surviving partner of a joint-venture that entered a June 9, 1981 contract with the District of Columbia to install the mechanical portion of the District's Convention Center. The contract obligated the District to pay the joint-venture $10.6 million for the work. Article 3 of the contract provided for a "change order" procedure by which the District could request modifications to the original construction plans. Under this arrangement, the District authorized and approved requested work with the issuance of change order tickets. Within 30 days of completion of such work, it was to submit these change order tickets, together with its re-

1. We note at the outset that such cases involving the District as a contracting party are unlikely to recur because of enactment of the District of Columbia Quick Payment Act, D.C. Code §§ 1– 1171 *et seq.* (1981 & 1986 Supp.). The Act specifies when interest begins to run in government contract disputes and requires the Mayor to establish the rate of interest by regulation.

quest for payment for such modifications, to the District's contracting officer for approval. The contracting officer reviewed such work tickets and then approved or settled the amount due according to an "equitable adjustment" clause.[2] Through subsequent equitable adjustments, the contract price was revised to approximately $11.77 million.

Article 8 of the contract obligated the District to make monthly progress payments on itemized estimates submitted by Pierce and approved by the contracting officer. Article 8 also authorized the District to withhold a retainage of 10% of progress payments "until completion and acceptance of the Contract work."[3] After substantial completion of the work, the contracting officer was empowered, but not required, to release excess retainages if the District's interests were adequately protected.[4] Final payment of the retainage was due only upon completion and acceptance of all work by the contracting officer and after Pierce had executed a final voucher and release of all claims arising under the contract. Article 11 of the contract provided for inspection of all work by the District; the District agreed to make acceptance and payment "as promptly as practicable after completion and acceptance of all work required by the Contract."

Although the District timely paid the bulk of the contract price through progress payments to Pierce as the work proceeded, a dispute arose as to when certain final payments under the contract were due. Pierce's complaint alleges that it "substantially completed" its contractual obligations and had "expended 99.5% of its final recorded costs" as of April 1, 1983, and that the District's final payments became due at this time. The District disputed that Pierce substantially completed its obligations under the contract as of this date. It is undisputed, however, that Pierce submitted change order vouchers throughout the summer and fall of 1983 and that on November 4, 1983, Pierce submitted a list of change proposals for which it had not been paid. This list contained a request for payment of $362,822 for work completed or billed after April 1, 1983. The District made payments on several, but not all, of these requested change orders after April 1.

On December 5, 1983, Pierce presented, at the District's request, its final bill to the District's contracting officer for all outstanding payments due. This statement indicated that the District had made payments of $11.28 million, and that $485,283.85 remained unpaid. The bill was accompanied by a form release, dated December 6, 1983, specifying that Pierce would release the District from all further claims upon payment of the remaining amount. In December 1983 and January 1984, the District's contracting officer approved the remaining change orders submitted by Pierce, and, in a May 1, 1984 letter, agreed that the District owed Pierce $485,283.85. Although the District acknowledged its indebtedness, it did not pay Pierce this amount until September 25, 1984, over a month after the complaint in the instant case was filed on August 16, 1984.[5]

---

**2.** Article 3C provides: "If any change ... causes an increase in the Contractor's cost of, or the time required for the performance of any part of the work under this contract, ... an equitable adjustment shall be made and the contract modified in writing accordingly." Under Article 7, in the event of a dispute concerning equitable adjustments, Pierce was to present its claims to the contracting officer, and if dissatisfied with his actions, to appeal to the Contract Appeals Board.

**3.** This contractual provision is mandated by D.C. Code § 1–1109 (1981) which requires the 10% retainage in construction contracts made by the District of Columbia as a "guaranty fund that the terms of contracts shall be strictly and faithfully performed."

**4.** Under § 1–1109, the Mayor is permitted, "in his sole discretion," to withhold less than 10% of the contract price after more than 50% of the construction work has been finished, if he "considers the amount retained to be in excess of the amount adequate for the protection of the District of Columbia."

**5.** District funding for the Convention Center had run out and additional funds could not be obtained until District officials requested, and Congress approved, additional monies on August 23, 1984.

## II

In its complaint in the Superior Court, Pierce, relying on D.C. Code § 15–109 (1981),[6] claimed that the debt was unliquidated and that the District should pay interest on the late payment sufficient to "fully compensate" it for its loss of the use of the funds during the period in which the debt was unpaid, and moved for summary judgment. In support of its motion for summary judgment, Pierce submitted an affidavit from its comptroller stating that its recent five-year average investment rate of return had been 15.99%, and that this rate should be the measure of compensation.

The District also filed a motion for summary judgment. In its motion, the District argued that, as a matter of law, any interest due Pierce should be restricted by D.C. Code § 15–108 (1981) and § 28–3302(a) (1981 & 1986 Supp.) to 6%.[7]

The trial court entered summary judgment for Pierce,[8] holding that interest at a rate of 15.99% was to be paid by the District for the period in which it delayed payment of the principal debt of $485,283.85. In an oral opinion, the court concluded that the debt was disputed, and therefore unliquidated, because the District failed to pay the debt for a significant period of time after it became due. The court therefore determined that D.C. Code § 15–109 applied, which the court interpreted as authorizing judicial discretion to award a rate of interest which could fully compensate the plaintiff. In making this

interpretation, the court concluded that the 6% statutory limit of D.C. Code § 28–3302(a) did not limit its discretion to award a higher rate, because such a limit would "frustrate" the compensatory purpose of § 15–109.

Alternatively, the trial court held that even if the debt was deemed acknowledged and liquidated, the 6% limit still could not apply, because "public policy and basic equity" required that awards under § 15–109 also not be so restricted. The court determined that under either Code section, the loss caused by delayed receipt of the final payment could only be determined by the then prevailing market rate. The court adopted Pierce's affidavit as to its current rate of return, and fixed the interest to be paid by the District at 15.99%. The court found that the debt was due on April 1, 1983, the date which Pierce averred that its performance under the contract was substantially complete, and that under either section, this was the appropriate starting date for the accrual of interest.

## III

The District first contends that the trial court erred by imposing the market rate of interest because such interest is limited by D.C. Code § 28–3302(a) to 6%, regardless of whether § 15–108 or § 15–109 is deemed applicable. Appellee Pierce argues in turn that the debt is unliquidated, and that § 15–109 therefore applies, which provides the trial court with discretion to award such prevailing market rate interest when

---

6. D.C. Code § 15–109 provides, in pertinent part:

Interest on judgment for damages in contract or tort.

In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.

7. D.C. Code § 15–108 provides, in pertinent part:

Interest on judgment for liquidated debt.

In an action in ... the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract

or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

D.C. Code § 28–3302(a) provides:

Rate of interest not expressed and on judgments.

The rate of interest in the District upon the loan or forbearance of money, goods, or things in action in the absence of expressed contract, is 6 percent per annum.

8. The court rejected Pierce's claim that the District's conduct had been fraudulent. It also dismissed Pierce's claims against individual District officials. Pierce does not appeal from these rulings.

the court deems necessary to fully compensate the plaintiff.

As a threshold matter, we observe that § 15–109 generally authorizes only post-judgment interest for breach of contract actions where the amount in controversy is unliquidated, while § 15–108 mandates prejudgment interest for liquidated debts from the date the debt is due until the date it is paid. *See Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1305 (D.C. 1979).

■ Prejudgment interest is available under § 15–109 in contract actions where no liquidated debt exists or where interest is not stated in the contract or by law or usage. *Id.* Under § 15–108, however, when the rate of interest has not been specified in the contract, courts in this jurisdiction have without exception limited it to the statutory rate provided in D.C. Code § 28–3302. *District of Columbia v. Potomac Electric Power Co.*, 402 A.2d 430, 441 (D.C. 1979) (limiting interest to 4% against the District of Columbia); *Bethlehem Steel Co. v. Lykes Bros. Steamship Co.*, 35 F.R.D. 344, 346 (D.D.C. 1964) (6% limit); *Messina v. Mutual Benefit Health & Accident Ass'n*, 228 F. Supp. 865, 871 (D.D.C. 1964) (same), *aff'd*, 121 U.S. App. D.C. 328, 350 F.2d 458 (1965), *cert. denied*, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966); *cf. Giant Food, Inc., supra*, 399 A.2d at 1303 (in a § 15–108 award of prejudgment interest, where interest rate was specified in the contract, "the contract controls, rather than the statutory rate of interest specified in . . . § 28–3302").

The general rule of § 15–109 is that interest on damages for a breach of contract claim runs only from the date of judgment, and that prejudgment interest is therefore

usually unavailable in breach of contract cases involving unliquidated claims. *See Giant Food Inc., supra*, 399 A.2d at 1305. But the section also contains an exception which allows the factfinder, in the exercise of its discretion, authority to award prejudgment interest in cases involving unliquidated claims if necessary to fully compensate the plaintiff. *See House of Wines, Inc. v. Sumter*, 510 A.2d 492, 499 (D.C. 1986); *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 550 n. 6 (D.C. 1981). The trial court has broad discretion in awarding such prejudgment interest under § 15–109 if necessary in the interest of justice. *House of Wines, Inc., supra*, 510 A.2d at 499. But this discretionary equitable power has thus far been held to extend only to the fixing of the effective *date*, not *rate*, of such interest in contract cases in which the debt is unliquidated.[9]

We further observe that neither § 15–108 nor § 15–109 mention applicable rates of interest. Both merely define the time limits for which interest can be obtained. This fact alone would seem to imply the conclusion that, in the absence of an expressed contractual provision, the governing statutory rate under the two sections is the same. But before we can finally resolve this question, some background is necessary.

Under the common law, prejudgment interest was viewed as a penalty to be imposed to punish the wrongdoing of the delinquent debtor, rather than as compensation for the losses of the creditor. Out of this view, the dichotomy between unliquidated and liquidated amounts arose: while a person who failed to pay a debt which was fixed and certain was considered a wrongdoer subject to penalty, it was

---

9. It should be noted that the federal district court has awarded prejudgment interest under § 15–109 only at the statutory rate. *See Donovan v. Carlough*, 581 F. Supp. 271, 273 (1984), *aff'd*, 243 U.S. App. D.C. 384, 753 F.2d 166 (1985); *General Ry. Signal v. WMATA*, 527 F. Supp. 359, 361 (1979), *aff'd*, 214 U.S. App. D.C. 170, 664 F.2d 296 (1980), *cert. denied*, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981). In this court's decisions applying § 15–109 thus far, the rate of interest awarded has either been unspecified, or at or less than the statutory rate. *See* *House of Wines, Inc., supra*, 510 A.2d at 499; *Edmund J. Flynn Co., supra*, 431 A.2d at 550 n. 6; *Noel v. O'Brien*, 270 A.2d 350, 351 (D.C. 1970). Only the United States Court of Appeals for the District of Columbia Circuit has awarded prejudgment interest at a rate greater than 6%, and that was in a lawsuit for restitution, in which neither § 15–108 nor § 15–109 were mentioned. *Bebchick v. Washington Metro. Transit Comm'n*, 207 U.S. App. D.C. 161, 168–69, 645 F.2d 1086, 1093–94 (1981) (7.1% rate).

deemed unfair to penalize one who failed to tender payment when he could not know the amount of the debt. *See* Recent Developments, *Prejudgment Interest as Damages: New Application of an Old Theory,* 15 STAN.L.REV. 107, 107–08 (1962); *Developments in the Law—Damages,* 61 HARV. L.REV. 113, 137 (1947).

In modern times the "penalty theory" of prejudgment interest increasingly has given away to the "loss" or "unjust enrichment" theory. This concept characterizes prejudgment interest as merely another element of damages, rather than as punishment for the wrongdoing of the defendant. Under the loss theory, whether the amount of the debt is readily ascertainable is irrelevant; the important question is whether the plaintiff has been deprived of the use of the money withheld and should be compensated for the loss. *See* Recent Developments, *supra,* 15 STAN.L.REV. at 109–10. Although courts have been slow to give up the traditional dichotomy between liquidated and unliquidated debts, the increasing acceptance of the loss theory has been reflected in the creation of statutes and judicial exceptions, such as that in D.C. Code § 15–109, which give the court discretion to allow prejudgment interest even when the debt amount is unliquidated. *See* Annotation, *Allowance of Prejudgment Interest on Builder's Recovery in Action for Breach of Construction Contract,* 60 A.L.R. 3d 487, 505–08 (1974).

■ In this light, the discretionary equitable authority of § 15–109 to award prejudgment interest in breach of contract actions involving unliquidated claims can be reasonably viewed as the legislature's attempt to equalize the treatment of liquidated and unliquidated amounts, providing an exception to the common law prohibition against prejudgment interest in cases where the damages are not initially known. Therefore, for purposes of clarification, we now hold that the statutory limit on prejudgment interest expressed in D.C. Code § 28–3302 applies with equal force to both liquidated and unliquidated sums under §§ 15–108 and –109. Accordingly, we conclude that just as the trial court cannot award interest at a rate greater than 6% under § 15–108, it also cannot under § 15–109, unless an express contractual provision is to the contrary.[10]

■ Having determined that prejudgment interest must be limited to the statutory rate, we must now decide which Code section and corresponding time frame for recovery applies in the instant case. As stated *supra,* to determine whether §§ 15–108 or –109 applies, we must determine whether the debt is liquidated or unliquidated. *See Giant Food, Inc., supra,* 399 A.2d at 1305. A liquidated debt is one which "at the time it arose, ... was an easily ascertainable sum certain." *Kiser v. Huge,* 170 U.S.App.D.C. 407, 421, 517 F.2d 1237, 1251 (1974), *rev'd in part on other grounds,* 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975) (en banc). "Even where a bona fide dispute exists as to a debt, courts generally find the liquidated nature of the debt unaffected." *Giant Food, Inc., supra,* 399 A.2d at 1302.

■ In this case, the District disputed neither the amount of the debt nor the fact that it was required to pay it. The District only disputed *when* the payment was due, rejecting the April 1, 1983 date on which Pierce claimed it had substantially performed; the District maintained instead that the payment was due at a later time, after it approved and accepted Pierce's work.[11] Indeed, "[i]t would be somewhat

---

**10.** While we agree with the trial court's concern that § 28–3302 may, depending on market conditions, set an artificially low limit on interest and may, therefore, work inequities by undercompensating plaintiffs and unjustly enriching defendants, this is a problem for the District Council, not this court, to resolve. "Unfortunately, while [the trial court's] arguments [are] logical and persuasive, the law ... at this time, does not permit an award of prejudgment inter-est in an amount greater than six percent.... Further, ... this is [not] a matter for judicial reform. Being statutory, reform in this matter is the province of the legislature." *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa. Super. 14, 39, 473 A.2d 584, 597 (1984).

**11.** On December 5, 1983, Pierce presented the District with a final bill for $485,283.85. Of this sum, $476,288.32 represented work done pursuant to change orders 23 through 30. The con-

artificial to find the debt unliquidated where ... the defaulting party knew the exact amount and terms of the contractual debt." *Id.* We conclude, therefore, that the District's acknowledged, uncontested final payment was a liquidated debt.

Given that the amount due on the contract was a liquidated sum, Pierce was entitled to prejudgment interest pursuant to D.C.Code § 15-108, from the date the debt became due and payable.

## IV

We now turn to the District's final contention, that the court erred in granting summary judgment to Pierce because genuine issues of material fact existed concerning the dates on which the debt became due and the interest began to accrue.[12] The trial court determined that the District's debt became due and payable to Pierce on April 1, 1983, the date Pierce avers that it had substantially completed its obligations under the contract. We conclude, however, that the trial court erred in this determination because the contract expressly states that such debts become due and payable only upon final completion by Pierce and acceptance by the District of the contract work. Article 3 mandates the District's acceptance of the change orders as a precondition to payment; Article 8 mandates the completion and acceptance of all work before the return of the 10% retainage.[13]

Summary judgment is permissible only when no genuine issue of material fact exists, after all inferences in the record are drawn against the moving party. *Spellman v. American Security Bank,* 504 A.2d 1119, 1122 (D.C.1986); *Phenix-Georgetown v. Charles H. Thompkins Co.,* 477 A.2d 215, 221 (D.C.1984). *See* Super. Ct.Civ.R. 56(c). To be successful, the moving party has the burden of demonstrating the absence of any material factual issue. *Spellman, supra,* 504 A.2d at 1122. When reviewing a trial court's order granting summary judgment, this court must conduct an independent review of the record. *Phenix-Georgetown, supra,* 477 A.2d at 221. Upon this review, we conclude that appellees did not meet their burden, and that there existed material issues of fact concerning the dates of the District's final acceptance of Pierce's work; summary judgment was, therefore, inappropriate.

We remand the case to the trial court for a hearing to determine the dates of the District's acceptance of the change orders and the final acceptance of all work for purposes of the return of the retainage, with instructions that prejudgment interest shall be assessed at 6% from these dates, in accordance with D.C.Code §§ 15-108 and 28-3302(a).

*Reversed and remanded for further proceedings consistent with this opinion.*

---

tracting officer approved these change orders by January 26, 1984. The remainder was a retainage kept by the District. In any event, the District formally confirmed the total $485,283.85 due in the May 1 1984 letter from the contracting officer to Pierce. *See also infra* note 13.

**12.** Given our disposition in Part III, *supra,* we need not reach the District's related contention—that it was also error for the trial court to grant summary judgment because there was a genuine issue of material fact concerning the then-prevailing market interest rate.

**13.** The dates of the District's acceptance are not discernible from the record before us. It appears that different portions of the final bill of $485,283.85 became due and payable at different times. On December 5, 1983, Pierce presented the District with a final bill for $485,-

283.85. Of this sum, $476,288.32 represented work done pursuant to change orders 23 through 30. Some of these change orders were approved by the District's contracting officer on December 8, 1983, some on January 9, 1984, and the remainder on January 26, 1984. The remainder of the bill was the retainage kept by the District, which under Article 8 was due after completion and acceptance of *all* work by the District. The District was apparently willing to concede at oral argument, however, that it finally accepted and became liable for all change orders and other work effective 30 days after Pierce presented its final bill on December 5, 1983, or January 4, 1984. It therefore now suggests that this should be the appropriate starting date for the accrual of prejudgment interest.