856 A.2d 1165 (2004)
Nancy H. BRAGDON, Personal Representative of Estate of Raymond M. Wilmotte, Appellant,
v.
TWENTY-FIVE TWELVE ASSOCIATES LIMITED PARTNERSHIP, et al., Appellees.
No. 03-CV-230.
District of Columbia Court of Appeals.
Argued April 27, 2004.
Decided September 2, 2004.
*1167 J. Michael Hannon, with whom William C. Batchelor, Washington, DC, was on the brief, for appellant.
James D. Sadowski, for appellees.
Before GLICKMAN, Associate Judge, STEADMAN, Associate Judge, Retired,[*] and KING, Senior Judge.
STEADMAN, Associate Judge, Retired:
This appeal arises from a jury verdict awarding the plaintiff/appellant the principal sum of $72,038 for overcharges in the daily rental rate at the defendant/appellee's community residence facility. The principal issue on appeal is whether prejudgment interest on the overcharges should have been awarded and, if so, in what amount. We hold that prejudgment *1168 interest must be awarded at the statutory rate, calculated with respect to the date of each individual overcharge. Also at issue is whether the trial court properly refused to allow an amendment to the complaint to seek punitive damages and to instruct the jury on such damages. In light of the jury's verdict finding no fraud, punitive damages would not be awardable in this case in any event.

I.
In 1981, Dr. Raymond M. Wilmotte became a resident of The Georgetown,[1] a community residence facility located at 2512 Q Street, N.W., in the District of Columbia. In 1985, The Georgetown notified him that it intended to raise his daily rate from $75 to $85. Dr. Wilmotte told The Georgetown that he was considering moving to another facility. An Admission Agreement executed by the parties on September 26, 1986, provided for a daily rate of $85. The Agreement itself contemplated the possibility of a change in the daily rate. However, in a letter on The Georgetown stationery, dated November 8, 1986, its executive director, noting prior "oral communication," wrote: "Please be advised that the current rate of $85.00 per day will remain in effect for the duration of your residency." Nonetheless, beginning on September 1, 1989, The Georgetown gradually increased, and Dr. Wilmotte paid, the daily rate up to an eventual amount of $112. The overcharges in principal amount totaled $72,038.
After Dr. Wilmotte's death at the age of ninety-eight in January of 2000, his personal representative, Nancy Bragdon, filed a complaint in the fall of 2000 against The Georgetown to recover the overcharged amount, alleging breach of contract and fraud.[2] In August of 2001, nearly a year into the suit and only a month before the discovery deadline that had already been twice extended, appellant sought to amend her complaint to add another party and to add claims for negligence, breach of fiduciary duty, and punitive damages. The trial court denied the motion. A month later, appellant filed a motion to reconsider, which was also denied. In April of 2002, appellant again requested leave to amend her complaint to add the new counts and the claim for punitive damages, which was denied.[3] The trial court also refused to submit to the jury an instruction proffered by appellant regarding punitive damages.
On November 13, 2002, the jury returned a verdict against The Georgetown in the principal amount of $72,038.[4] The jury found that the plaintiff had proved by a preponderance of the evidence that The Georgetown had breached its contract with Dr. Wilmotte and had exerted undue influence *1169 upon him in connection with the 1989 rent increase. The jury found that the plaintiff had not proved by clear and convincing evidence that The Georgetown had committed fraud upon Dr. Wilmotte. Following the verdict, appellant filed a motion for prejudgment interest in the amount of $29,135.03 and an amended motion for prejudgment interest in the amount of $206,656.77, both of which were denied.
Although the partial victor, the personal representative takes an appeal, challenging (1) the trial court's refusal to award prejudgment interest on the verdict amount, and (2) the trial court's denial of the motion to amend the complaint to include punitive damages and its refusal to submit that issue to the jury.

II.
Appellant claims that she is entitled to prejudgment interest pursuant to D.C.Code § 15-108 (2001), which reads in its entirety as follows:
In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.
Neither party disputes that the overcharges here were a "liquidated debt."[5] The question is whether interest was payable thereon "by contract or by law or usage."

A.
Appellant first asserts that "interest is payable by contract," arguing the Admission Agreement itself should be read to provide for interest on overcharges. The Agreement is absolutely silent on the subject in any express terms. Appellant however directs us to the provision in the Agreement that "[f]or any rents received after the 10th of the month, there will be a 2% finance charge posted on the following month's bill."[6] Since any late payment was subject to a "finance charge" of 2%, appellant argues that implicitly the Agreement should be read to provide for a similar "finance charge" on overpayments.[7]
The trial court rejected this argument on the ground that the "finance charge" was not "interest," but rather a "late fee." The court also found no evidence that the "parties agreed to pay interest."[8]
*1170 Appellant directs us to Giant Food where we awarded prejudgment interest based on a contractual term providing for the payment of a 1½% monthly finance charge to Giant upon late payment by appellee, because, although termed a "finance charge" rather than "interest," "the contract term [was] a manifestation of the parties' agreement to compensate Giant for a delay in payment or for the credit extended." Giant Food, Inc. v. Jack I. Bender & Sons, 399 A.2d 1293, 1303 (D.C. 1979). Even assuming that the trial court was incorrect and that, as in Giant Food, the 2% finance charge is a provision for interest rather than a late fee, the question remains whether the express provision entitling The Georgetown to an interest payment on a delinquent rental payment by the resident also implicitly requires The Georgetown to pay the resident, here appellant, interest at that rate in the event of an overcharge. We cannot read such an implied provision into the Agreement.
"This jurisdiction follows what has been called the `objective' law of contracts, which generally means that `the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake."' DSP Venture Group, Inc. v. Allen, 830 A.2d 850, 852 (D.C.2003) (quoting Geiger v. Crestar Bank, 778 A.2d 1085, 1091 (D.C.2001)). "[A] court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract," Washington Metro. Area Transit Auth. v. Nello L. Teer Co., 618 A.2d 128, 132 (D.C. 1992) and "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity ...." Redmond v. State Farm Ins. Co., 728 A.2d 1202, 1206 (D.C.1999) (quoting Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 697 A.2d 680, 683 (1997)). The Agreement unambiguously explicates who can collect the finance charge (The Georgetown) and under what circumstances (overdue rent from the resident). Appellant is asking us to include a provision in the Agreement that is plainly not there. We think that in the circumstances here, such a step would be an unwarranted extension of the occasional practice of supplying "omitted clauses" forced upon courts by unexpected circumstances. See E. ALLEN FARNSWORTH, 2 FARNSWORTH ON CONTRACTS § 7.16 (3d ed. 2004); RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981). Compare Washington Metro. Area Transit Auth., supra, 618 A.2d at 132-33 (refusing to imply a promise to pay prejudgment interest into the contract in the absence of a specific provision, where, at the time of the contract, prejudgment interest could only be awarded on the basis of a contractual provision) with Giant Food, supra, 399 A.2d at 1303, and Hildreth Consulting Eng'rs, P.C. v. Larry E. Knight, Inc., 801 A.2d 967 (D.C.2002) (prejudgment interest was awarded on the basis of a contractual provision for a monthly finance charge where that interest was awarded to the same party and for the same breach for which the contract expressly provided the finance charge). We are particularly reluctant to read any such implied provision relating to interest into the Agreement where § 15-108 not only is explicit that interest shall be "payable by contract" but also offers two alternate bases for the award of interest "by law or *1171 usage," both of which serve to supplement situations where contracting parties are silent on a particular aspect of the transaction. See, e.g., D.C.Code § 28:1-205(2).
Our conclusion that the finance charge in the Agreement applies only to Dr. Wilmotte for the late payment of rent is consistent with the interests at stake. The Agreement's express finance charge has an effect to deter a renter from delaying his payment of rent. It is imposed after only a ten-day delay. Where rent is late, the renter continues to enjoy the use of the property and The Georgetown continues to perform its obligations under the Agreement, including the incurring of related costs. Thus, the situation is significantly different from the case of a pure loan where the creditor has fully performed. The overcharged renter is in a position similar to such a lender, losing only the value of the money overpaid. To put the point another way, contractual interest rates and finance charges reflect the particular circumstances involved and such a provision relating to one aspect of an agreement cannot readily be carried over to a different set of circumstances. We decline to do so here. Cf. EDWIN MANSFIELD, PRINCIPLES OF MICROECONOMICS 272-73 (WW Norton & Company, 7th ed. 1992) ("Interest rates vary, depending on the nature of the borrower and the type of loan. One of the most important determinants of the rate of interest charged borrowers is the riskiness of the loan. If lenders have doubts about their chances of getting their money back, they will charge a higher interest rate .... Another factor that influences the interest rate is the cost of bookkeeping and collection ... [there are a] diversity of interests rates encountered at any point in time in the real world").

B.
However, the evaluation of whether D.C.Code § 15-108 requires an award of prejudgment interest "is not limited to determining whether such interest is authorized by the underlying contract." Nolen, supra note 8, 726 A.2d at 184. D.C.Code § 15-108 also mandates the award of prejudgment interest on a liquidated debt if such interest is payable "by law or usage."[9] We have said that this "statute providing for pre-judgment interest is remedial and should be generously construed so that the wronged party can be made whole." Riggs, supra note 5, 581 A.2d at 1255. "[T]he important question is whether the plaintiff has been deprived of the use of the money withheld and should be compensated for the loss." District of Columbia v. Pierce Associates, Inc., 527 A.2d 306, 311 (D.C.1987). Prejudgment interest is not meant to punish a defendant. Id. However, where the plaintiff has lost use of his money, "a denial of prejudgment interest would deny full compensation to the [plaintiff] while allowing the recalcitrant party to take advantage of his own wrong and become the richer for it." Celtech, Inc. v. Broumand, 584 A.2d 1257, 1260 n. 7 (D.C.1991).
"[A] court must conduct a separate analysis of each of the three statutory bases  `contract,' `law,' and `usage'  for awarding pre-judgment interest." Nolen, supra note 8, 726 A.2d at 185. In Nolen, where the appellant sought prejudgment interest on the delayed payment of a settlement, we held that "[g]iven the broad remedial purpose of pre-judgment interest ... the trial court's failure to look beyond the terms of the contract when applying section 15-108 was error." Id. We remanded the case to the trial court to determine "whether common law or customary usage *1172 provides for the payment of pre-judgment interest on a liquidated debt in cases `analogous in principle' to the breach of a settlement agreement." Id. (quoting Riggs, supra note 5, 581 A.2d at 1255).
As in Nolen, the trial court in this case improperly limited its evaluation to the Agreement, ruling that "[a]bsent evidence that the parties agreed to pay interest ... there [was] no basis to award prejudgment interest . . . ." The trial court should have ascertained whether, independent of the expressed intent of the parties, law (statutory or common) or customary usage required the payment of prejudgment interest. However, unlike Nolen, we need not remand this case for that purpose since we are quite satisfied from existing case law that in the case of overcharges, prejudgment interest is mandated by § 15-108 on the basis of law and usage. Notably, in District Cablevision, we awarded prejudgment interest to the plaintiffs on the amount they were overcharged. See District Cablevision Ltd. P'shp v. Bassin, 828 A.2d 714, 731-32 (D.C.2003). Although the parties disputed whether the amount was liquidated for purposes of D.C.Code § 15-108 rather than whether prejudgment interest was payable by contract or by law or usage, in providing prejudgment interest on the overcharged amount, we noted that "it is indeed customary to pay interest on funds that are withheld and not paid when due" and that "[p]rejudgment interest is `an element of complete compensation ....'" Id. (quoting Riggs, supra note 5, 581 A.2d at 1253). Other jurisdictions have similarly held. See, e.g., Perez v. Z Frank Oldsmobile, Inc., 223 F.3d 617, 620 (7th Cir.2000) (plaintiff entitled to prejudgment interest on overpayment for car because he lost use of that money), cert. denied, 531 U.S. 1153, 121 S.Ct. 1099, 148 L.Ed.2d 971 (2001); Kissimmee Utility Auth. v. Better Plastics, Inc., 526 So.2d 46 (Fla.1988) (prejudgment interest awarded to utility customer against public utility for rate overcharge); Sholer v. State ex rel. Department of Pub. Safety, 945 P.2d 469, 477 (Okla.1995) (drivers charged multiple fees for reinstatement of license entitled to prejudgment interest on unrefunded portion of excessive fees); Staker v. Huntington Cleveland Irr. Co., 664 P.2d 1188 (Utah 1983) (prejudgment interest granted in an action to recover a overpayment of water subscription charges).
In order to fully compensate appellant for the overpayment to The Georgetown and the resulting deprivation of the use of that money, appellant is entitled to prejudgment interest.[10] We are remanding the case to the trial court so that it may make a precise determination of the amount of that prejudgment interest and amend the judgment accordingly. The prejudgment interest should be calculated on each overcharge from the date of its payment, at the statutory rate provided in D.C.Code § 28-3302(c).[11]See Pierce *1173 Associates, supra, 527 A.2d at 310, 312. A further adjustment may be required to reflect the existence of the award to The Georgetown in its counterclaim, the details of which are not apparent in the record on appeal. See District Cablevision, supra, 828 A.2d at 732.

III.
Appellant also appeals the trial court's denial of her motion to amend the complaint to include punitive damages and its refusal to submit that issue to the jury. Given the actual outcome of the litigation, we need not determine these issues. The denial of the motions to amend and the refusal to give a punitive damages instruction, even if an abuse of discretion, resulted in no actual prejudice to appellant since she was not entitled to punitive damages at all under the jury verdict as rendered. The jury in this case found a breach of contract, but rejected appellant's claim that The Georgetown had committed fraud upon Dr. Wilmotte. "`Punitive damages will not lie for breach of contract, even if it is proven that the breach was willful, wanton, or malicious.' The only exception to that rule recognized in the District of Columbia is that `where the alleged breach of contract merges with, and assumes the character of, a willful tort ... punitive damages [will] be available.'" Bernstein v. Fernandez, 649 A.2d 1064, 1073 (D.C. 1991) (citations omitted); cf. 3 DOBBS, LAW OF REMEDIES § 12.5(2), at 117 (2d ed. 1993) ("common law rule holds that punitive damages are not to be awarded for simple breach of contract"). The jury's rejection of the claim of fraud eliminates the argument that the breach of contract here assumed the character of a willful tort.
Contrary to appellant's contention, the jury's finding of undue influence did not create the predicate necessary for an award of punitive damages.[12] The District has not recognized a distinct tort of undue influence. See Roberts-Douglas v. Meares, 624 A.2d 405, 419 (D.C.1992) (also noting that "there are significant differences between fraud and undue influence"); 2 DOBBS, supra, § 10.3, at 658 ("there is no tort of undue influence, and there is no right to damages, as distinct from restitution, because of such influence"). Moreover, "[p]unitive damages are a form of punishment .... [And] are, accordingly, to be awarded only in cases of outrageous or egregious wrongdoing where the defendant has acted with evil motive, actual malice, or in willful disregard for the rights of the plaintiff. So, for example, in the absence of `gross fraud' or comparable wrongdoing, proof of even intentional misrepresentation may not suffice to justify punitive damages. To obtain an award of punitive damages, moreover, the plaintiff must prove egregious conduct and the requisite mental state by clear and convincing evidence." District Cablevision, supra, 828 A.2d at 725-26.

IV.
We remand the case to the trial court to add prejudgment interest as set forth in this opinion to the jury's award of compensatory *1174 damages. In all other respects, the judgment is affirmed.
NOTES
[*] Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on August 8, 2004.
[1] The Georgetown is operated by Twenty-Five Twelve Associates, a limited partnership. That partnership and its general partner are the two appellees. For convenience, in this opinion we refer to them collectively as The Georgetown.
[2] A third count sought restitution on the bases of mistake of fact, money had and received, and unjust enrichment. Consistent with the instructions on the verdict form, because the jury found a breach of contract, it did not reach the third count.
[3] The first motion to amend was denied by Judge Leonard Braman. The motion to reconsider that denial was presented to and denied by Judge Steffen W. Graae. The second motion to amend was denied by Judge Rhonda Reid Winston, who presided over the trial. None of the orders of denial explicated the court's reasoning.
[4] The jury found in favor of The Georgetown on its counterclaim for $6,449.30 based on rent due for Dr. Wilmotte's living quarters after his death until vacated by the personal representative. This counterclaim award is not an issue on appeal.
[5] This is not self-evident, since the liability for the overcharges did not stem from an explicit promise to pay such an amount. However, we have given the term "debt" a broad reading, applying it, for example, to a statutory obligation of a bank to pay over dormant deposits to the government. See Riggs Nat'l Bank v. District of Columbia, 581 A.2d 1229, 1254 (D.C.1990).
[6] Although the "rent" was expressed on a daily basis, it was payable in a monthly lump sum in advance on the first day of each calendar month.
[7] Furthermore, she asserts, this finance charge should be read as compounded monthly. By her calculations, this compounded finance charge on the overpayments totals $206,656.77. Appellee contends that The Georgetown assesses the finance charge only once and that it is not compounded. We need not resolve this dispute in light of our disposition of this case. However, we note that "[p]rejudgment and judgment interest are ordinarily not compounded in the absence of contract provision .... Furthermore, where the contract does not specifically require compound interest, we are reluctant to imply such a term absent a showing of agreement between the parties ...." Giant Food, supra, 399 A.2d at 1304 (citing DOBBS, REMEDIES § 3.5, at 164 (1973) and 5 CORBIN, CONTRACTS § 1047 (1951)).
[8] The trial court only considered whether prejudgment interest was required under the Agreement but did not consider whether law or usage required such award under D.C.Code § 15-108. As discussed infra, "a court must conduct a separate analysis of each of the three statutory bases`contract,' `law,' and `usage'for awarding pre-judgment interest." Nolen v. District of Columbia, 726 A.2d 182, 185 (D.C.1999).
[9] "[W]hen the rate of interest has not been specified in the contract, courts in this jurisdiction have without exception limited it to the statutory rate provided in D.C.Code § 28-3302." Pierce, infra, 527 A.2d at 310.
[10] Because prejudgment interest is mandated under D.C.Code § 15-108, we need not address appellant's alternate argument that the trial court erred in ruling that any claim for prejudgment interest under D.C.Code § 15-109 had to be presented to and awarded by the trier of fact, in this case, the jury.
[11] The argument that interest should only accrue from the time that demand was made for the overcharges fails to recognize that prejudgment interest is not necessarily related to fault or knowledge of The Georgetown. See Pierce Associates, supra, 527 A.2d at 311. Prejudgment interest is not designed to punish a defendant but to compensate a party for the deprivation of the use of his money. See id. Whether innocently or intentionally, The Georgetown possessed money that should have been in Dr. Wilmotte's possession. Just as The Georgetown is not entitled to retain the overcharges paid by Dr. Wilmotte, it cannot retain the benefit that results from possession of those overcharges. That is not to say that circumstances may not exist where the fault, knowledge, or acquiescence of one or both parties would affect the timing of the interest obligation, but given the jury's finding of undue influence, we fail to see how the requirement for a demand could have any application here.
[12] The issue of undue influence was relevant in this case because of the trial court's instruction that if the jury found that there was a confidential relationship between Dr. Wilmotte and The Georgetown, the burden of proof was on the Georgetown to show that no undue influence was used in connection with the rate increases and that if that burden was not met, the jury must find a breach of contract. See Davis v. Altmann, 492 A.2d 884, 886 (D.C.1985).