**NELLO L. TEER COMPANY**

v.

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Appellant.**

Nos. 89–7274, 89–7282.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 16, 1990.

Decided Dec. 11, 1990.

As Amended Jan. 2, 1991.

Roy T. Englert, Jr., with whom Kenneth S. Geller, Robert L. Polk, Arnold I. Melnick and Thomas B. Dorrier, Washington, D.C. were on the brief, for Washington Metropolitan Area Transit Authority, appellant in 89–7274 and cross-appellee in 89–7282.

Richard G. Mann, Jr., with whom John B. Tieder, Jr. and Robert K. Cox, McLean, Va. were on the brief, for Nello L. Teer Co., appellee in 89–7274, and cross-appellant, in 89–7282.

Before EDWARDS, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal raises the issue whether, under the law of the District of Columbia, there can be an implied contractual duty arising under a 1974 construction contract obligating the Washington Metropolitan Area Transit Authority ("WMATA") to avoid unreasonable delays in processing "equitable adjustment" claims, the breach of which would entitle an aggrieved contractor to an award of prejudgment inter-

est. Because this issue raises an unresolved question of local law, and because "[a] federal court ... should normally decline to speculate on such a question of local doctrine," *Delahanty v. Hinckley,* 845 F.2d 1069, 1070 (D.C.Cir.1988), we hereby certify the question to the District of Columbia Court of Appeals pursuant to section 11–723 of the D.C.Code.

## I. BACKGROUND

In accordance with the certification procedures of the District of Columbia, we will set forth the facts relevant to the questions certified and the nature of the controversy in which the questions arose. *See* D.C. CODE ANN. § 11–723(c) (1981). We recognize that this Background section is somewhat unusual in its length; this is because the antecedent case law, from the District of Columbia and from this court, is both extensive and confused. In the end, however, the certified questions are straightforward.

### A. *The Nature of the Controversy*

WMATA, the appellant in this case, challenges an award of prejudgment interest to the appellee, Nello L. Teer Company ("Teer"), a construction contractor formerly doing business with WMATA; Teer cross-appeals the amount of that award. This action stems from a 1974 contract between WMATA and Teer for construction of the Clarendon Metrorail Station in Arlington, Virginia. The contract contains a standard "Changes" ("equitable adjustment") clause, which provides in part:

> If any [contract] change ... [attributable to WMATA] causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any order, an equitable adjustment shall be made and the contract modified in writing accordingly ....

On December 1, 1976, Teer submitted a claim for an "equitable adjustment," contending that WMATA's delay in obtaining easements necessary for Teer to perform some of its work had caused Teer to incur more than $8 million in additional costs. On November 16, 1979, WMATA unilaterally adjusted the contract price by $592,814 to compensate Teer for those costs that it found properly attributable to WMATA's delay, but determined that any other additional costs Teer may have incurred were due to its own "inefficient operation" rather than to WMATA's actions. On December 4, 1979, Teer appealed this decision to the Board of Contract Appeals of the Army Corps of Engineers ("Board").[1]

Nearly seven years later, the Board issued its advisory opinion. *See Nello L. Teer Co.,* 86–3 B.C.A. (CCH) ¶ 19,326 (1986). The Board rejected the majority of Teer's claims, which had grown to more than $12 million. However, finding that the Contracting Officer's unilateral adjustment had underestimated some of Teer's additional costs resulting from WMATA's delays, the Board increased the adjustment by $138,937. Citing the "unusually long" interval between the time Teer filed the administrative appeal and its disposition, the Board also awarded Teer $58,870 in prejudgment interest (which the Board termed "additional profit") on its incremental award, calculated at 6% per annum from the date the appeal was filed until the date of the Board's decision. In recommending prejudgment interest, the Board expressed the view that an equitable adjustment should "reflect the length of time that Teer has had to bear the burden of costs incurred for the Authority's account," and speculated that "a reviewing court would award prejudgment interest under these circumstances." *Id* at 97,770.

On July 20, 1987, the General Manager of WMATA issued a final decision on

---

**1.** The "Disputes" clause in the WMATA/Teer agreement provides that contract disputes be heard initially by the Board, which then issues an advisory opinion to the General Manager of WMATA. After reviewing the Board's opinion, the General Manager renders a final decision which is subject to judicial review in the United States district courts and the courts of Maryland and Virginia. *See* D.C.CODE ANN. § 1–2439 (1981) and Section 81 of the Washington Metropolitan Area Transit Authority Compact, D.C. CODE ANN § 1–2431 (1981).

Teer's claim, accepting the Board's proposed increment for Teer's increased costs, but rejecting the recommendation of prejudgment interest on that amount. In reaching this decision, the General Manager stated that, as an interstate agency, WMATA was immune from an award of prejudgment interest "unless such interest is *specifically* provided for by statute or by contract." Finding neither a statutory nor a contractual provision that specifically authorized an award of prejudgment interest in this case, the General Manager rejected the Board's proposal as ill-founded as a matter of law.

■ Teer sought judicial review of the General Manager's decision in the District Court of the District of Columbia, challenging both the adequacy of the equitable adjustment award and the General Manager's refusal to pay prejudgment interest on the Board's increase to the award. The District Court upheld the adequacy of the award as a whole, a ruling which Teer does not challenge. However, the trial court initially deferred judgment as to whether an equitable adjustment provision in a construction contract is sufficient to waive WMATA's sovereign immunity from an award of prejudgment interest, pending this court's resolution of that issue in *General Ry. Signal Co. v. WMATA*, 875 F.2d 320 (D.C.Cir.1989) (per curiam) (*"GRS II"*), cert. denied, —— U.S. ——, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990).[2]

B. *The Antecedent Case Law on Prejudgment Interest*

On May 12, 1989, a panel of this court issued its decision in *GRS II*. The court found that an equitable adjustment clause "imports into the contract a doctrine man-

dating a make-whole remedy that will restore a contractor to the contractor's prechange circumstances," and declared that an award of prejudgment interest on sums expended by a contractor because of WMATA's changes to a contract was necessary to restore the contractor to its *status quo ante*. 875 F.2d at 327. Accordingly, the court in *GRS II* held that WMATA had waived its sovereign immunity from prejudgment interest by including an equitable adjustment clause in its construction contract and upheld a District Court award of such interest. *Id.*

■ Only five days later, however, the District of Columbia Court of Appeals held that, as a matter of District contract law, an equitable adjustment clause in a 1968 construction contract did *not* authorize an award of prejudgment interest against the District. *District of Columbia v. C.J. Langenfelder & Son, Inc.*, 558 A.2d 1155 (D.C.1989). The Court of Appeals emphasized the "fundamental principle" that contract provisions be construed so as to honor the parties' reasonable expectations at the time they executed the contract. *Id.* at 1159. The court then reviewed pre–1968 case law and Contract Appeals Board decisions interpreting equitable adjustment terms in Government contracts, since contracting parties are presumed to be aware of the customary and common usage of their contract terms. *Id.* The court concluded that Langenfelder and the District had "executed their contract against a background of judicial and administrative interpretations which held that a contractor could not recover interest for delays in the resolution of contract disputes with the government." *Id.*[3] The court in *Langen-*

2. Actions based upon WMATA's contracts are governed by "the law of the applicable signatory" to the WMATA Compact. Section 80, Washington Metropolitan Area Transit Authority Compact, D.C.Code Ann. § 1–2431 (1981). Maryland, Virginia and the District of Columbia are the three signatories to the Compact. Although the issue was not raised below, the District Court relied on District of Columbia statutory and case law, as well as cases from this court applying District contract law, apparently on the assumption that the District was the "applicable signatory" in this case. Since neither par-

ty has objected to this choice of law, and we find no error in the choice made, we apply the contract law of the District as well. *See Lee v. Flintkote Co.*, 593 F.2d 1275, 1279–80 (D.C.Cir. 1979) (applying same law as that applied by District Court where parties neither briefed the choice of law issue nor objected to District Court's choice of law).

3. This finding related only to prejudgment interest *on equity capital* expended by a contractor as a result of the Government's changes to a contract. As the Court of Appeals acknowledged,

*felder* therefore found that the parties did not intend their 1968 contract to provide for prejudgment interest as part of a contractor's equitable adjustment. *Id.*

The *Langenfelder* court expressly rejected this court's analysis in *GRS II. Id.* at 1163. The Court of Appeals suggested that the *GRS II* court, in awarding a contractor prejudgment interest based on 1989 notions of equitable adjustments, had improperly reformed a contract negotiated by the parties years earlier against an entirely different legal background. *See id. Langenfelder* thus left no doubt that *GRS II,* as a matter of District law, incorrectly construed the scope of equitable adjustment terms in Government contracts executed in the early 1970s.

■ Teer claims that *GRS II* is still controlling precedent in this case—notwithstanding the D.C. Court of Appeals decision in *Langenfelder*—because the WMATA/Teer contract was executed in 1974, rather than in 1971, when the contract at issue in *GRS II* was signed. Teer argues that *Langenfelder's* rejection of *GRS II* merely indicated the D.C. Court of Appeals' disapproval of this court's interpretation of "equitable adjustment" clauses in 1971 contracts. Between 1971 and 1974, Teer maintains, the meaning of the term "equitable adjustment" had evolved to encompass prejudgment interest. We find this argument unpersuasive.

The rule that prejudgment interest on capital was not available to a Government contractor was apparently alive and well when WMATA and Teer entered into their contract. As the D.C. Court of Appeals observed in *Langenfelder:*

> The [no-interest] rule was so engrained in the law of this jurisdiction that the D.C. Circuit noted that *as of 1974,* "not a single court or board of contract appeals had allowed recovery of interest foregone on equity capital as a 'cost of performance.'"

558 A.2d at 1160 (emphasis added) (quoting *George Hyman Constr. Co. v. WMATA,* 816 F.2d 753, 760 (D.C.Cir.1987)). The *Langenfelder* court determined that the allowance of prejudgment interest against Government entities was a development of the *late* 1970s and the 1980s, *see* 558 A.2d at 1158–59, and observed that the eventual demise of the no-interest rule was precipitated by two post–1974 events: the Defense Department's promulgation in 1976 of procurement procedures allowing prejudgment interest without regard to borrowing expenses on the part of the contractor; and the passage of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* (1988), which removed the bar on interest awards against the United States. *See* 558 A.2d at 1162. Most tellingly, Teer has cited no authority to indicate that, when the present contract was executed in 1974, prejudgment interest unrelated to borrowings had ever been awarded under a Government contract as part of a contractor's equitable adjustment. Thus, we cannot agree with Teer that, notwithstanding the D.C. Court of Appeals' decision in *Langenfelder, GRS II* is dispositive of this case.

Unfortunately, our recognition of the limited force of *GRS II* does not resolve this case. In its post-*GRS II* opinion, the District Court noted an "apparent conflict" between *GRS II* and *Langenfelder.* However, while recognizing that *Langenfelder* had rejected *GRS II,* the District Court nonetheless held that prejudgment interest may be awarded under an equitable adjustment provision of a Government contract where, as here, the governmental agency has subjected a contractor to "unreasonable delay" in processing its claim. The District Court based this holding on an *implied condition* in the WMATA/Teer contract; it thus avoided the direct limits of *Langenfelder.*

In reaching this holding, the District Court relied primarily on this court's summary affirmance of an award of prejudgment interest in *General Ry. Signal Co. v. WMATA,* 664 F.2d 296 (D.C.Cir.1980) (per

---

an exception to the "no-interest" rule was recognized where a contractor could demonstrate that it had paid interest *on borrowings* necessitated by contract changes. *Langenfelder,* 558 A.2d at 1161. Teer has not argued that it fits within this exception.

curiam) ("*GRS I*"), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981).[4] In *GRS I,* this court stated in a one paragraph *per curiam* opinion that the contract before it "included an implied condition requiring WMATA to make equitable adjustments of claims under the contract within a reasonable period of time" and that "a failure to comply with that condition could give rise to a claim for interest under the parties' contract." *Id.* at 296. The court in *GRS I* relied in part upon section 15–109 of the D.C.Code, which permits courts to award interest in cases of breach of contract where necessary fully to compensate the plaintiff. The *GRS I* opinion does not contain any reasoning to explain the court's decision.

WMATA contends that *GRS I,* like *GRS II,* is inconsistent with the District of Columbia Court of Appeals' decision in *Langenfelder,* and thus should not be followed. WMATA points out that *Langenfelder* itself involved a 20–year delay in settling the plaintiff's equitable adjustment claim. Had the Court of Appeals intended to permit an exception to its rule against prejudgment interest for "unreasonable delay," WMATA argues, it would assuredly have applied that exception in *Langenfelder* itself.

While we agree with WMATA that the *Langenfelder* decision places our *GRS I* holding in question, we do not believe that *Langenfelder,* of its own force, is sufficient authority for us to abandon *GRS I.* First the great majority of the time expended in settling the claim in *Langenfelder* was consumed by court delays, rather than delays at the administrative level which are more properly deemed the responsibility of the Government agency. *See* 558 A.2d at 1157–58. We find no indication in the *Langenfelder* opinion of undue administrative delay in either the District's initial processing of Langenfelder's claims or the Contract Appeals Board's handling of its subsequent appeals. In contrast, the Board in the present case found that its delay in processing Teer's claim was excessive and not in any way attributable to Teer's conduct, and determined that, on this basis, an award of prejudgment interest for Teer was appropriate. It is thus not readily apparent to us that *Langenfelder* involved an unreasonable delay of the type present in this case.

Second, there is nothing in the *Langenfelder* opinion to indicate whether the plaintiff argued for prejudgment interest based on an unreasonable delay theory. Since the D.C. Court of Appeals apparently was never afforded the opportunity to consider this argument in *Langenfelder,* we can only speculate as to how that court will respond when faced with the issue. There is no need for us to set sail on such uncertain waters, however, when the safe harbor of the District's certification procedure is so easily within our reach. We therefore ask the Court of Appeals to decide whether, under the law of the District of Columbia, there can be an implied contractual duty arising under a 1974 construction contract obligating WMATA to avoid unreasonable delays in processing equitable adjustment claims, the breach of which would justify a court's award of prejudgment interest to the contractor.

## C. *Section 15–109 of the D.C.Code*

Teer also has suggested that the prejudgment interest award in this case can be independently justified on the basis of section 15–109 of the D.C.Code, which permits trial courts to award prejudgment interest in breach of contract cases when necessary fully to compensate the plaintiff. In *Langenfelder,* however, the court expressly

---

4. The District Court also cited three other cases in support of its holding. However, these cases (all decided before *Langenfelder*) do not stand for the proposition that a Government agency's unreasonable delay justifies an award of prejudgment interest to a Government contractor. Although prejudgment interest was awarded in both *District of Columbia v. Pierce Assoc., Inc.,* 527 A.2d 306 (D.C.1987) and *District of Colum-*

*bia v. Potomac Elec. Power Co.,* 402 A.2d 430 (D.C.1979), no mention of unreasonable delay appears in either opinion. And while *Granite-Groves v. WMATA,* 845 F.2d 330 (D.C.Cir.1988), relied on *GRS I* in calculating a contractor's prejudgment interest award, WMATA never challenged the propriety of the award itself. *Id.* at 332.

stated that an equitable adjustment claim "arises under the contract and is not in the nature of breach of contract." 558 A.2d at 1159. The *Langenfelder* court also noted that, when claims arise under a contract, "the contract itself governs the method and scope of relief available." *Id.* (citing *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511, 87 S.Ct. 1177, 1182, 18 L.Ed.2d 256 (1967)). To our reading, this language indicates that, unless the D.C. Court of Appeals finds that WMATA breached an implied duty to avoid unreasonable delay in processing Teer's claim, section 15–109 has no relevance to this case. However, as we are already utilizing the certification procedure, we would prefer not to surmise the Court of Appeals' response to this argument when we can obtain a definitive answer from the court itself. We therefore also ask the D.C. Court of Appeals to determine whether section 15–109 of the D.C.Code could provide an independent basis for a prejudgment interest award as part of an equitable adjustment claim under the facts of this case.

### D. *The Time Period for Calculating Prejudgment Interest*

Should the D.C. Court of Appeals determine that an award of prejudgment interest could properly be made either on the basis of an implied condition that WMATA avoid unreasonable delay in processing Teer's claim or on the basis of section 15–109 of the D.C.Code, we ask the court to answer a final question concerning the appropriate time period for calculating such an award. The District Court below affirmed the Board's finding that interest should be calculated from December 4, 1979, when Teer's administrative appeal was filed, rather than from the date when Teer completed the work, as Teer had suggested. Teer challenges this ruling as contrary to our decision in *Granite–Groves v. WMATA*, 845 F.2d 330 (D.C.Cir.1988). In that case, a panel of this court held that "a contractor who has been subjected to unreasonable delay is entitled to recover interest for the full period [from when the claim is first submitted] until the claim is paid," and reversed the WMATA General

Manager's award of interest only for the period of the unreasonable delay. *Id.* at 343. In reaching this holding, the court relied upon both *GRS I* and section 15–109 of the D.C.Code.

As we have noted above, the continued vitality of these authorities with regard to equitable adjustment claims has been placed in doubt by the *Langenfelder* decision. Moreover, the holding in *Granite–Groves* was undermined when *GRS II*, on which the District Court relied in making its interest calculation below, subsequently upheld an award of prejudgment interest limited to a period of unreasonable delay. *GRS II*, 875 F.2d at 329. The *GRS II* court determined that, notwithstanding the seemingly bright-line rule announced in *Granite–Groves*, a trial court enjoyed broad discretion in determining the point from which prejudgment interest should be awarded. *Id.*

Rather than choose between the respective treatments of this issue in *GRS II* and *Granite–Groves*, we certify a third question to the D.C. Court of Appeals. Should the court find a local law basis for an award of prejudgment interest in this case, we ask it to determine whether such an award should be calculated: (1) from the time the equitable adjustment claim is first submitted; (2) solely for the period constituting the unreasonable delay; or (3) for either period, depending upon the facts and circumstances of the particular case, according to the discretion of the trial court.

### II. THE CERTIFIED QUESTIONS

In the absence of controlling precedent in the decisions of the D.C. Court of Appeals, and in light of the foregoing statement of facts relevant to the questions certified and the nature of the controversy in which the questions arose, we hereby certify to the D.C. Court of Appeals the following questions of law:

(1) Under the law of the District of Columbia, can there be an implied contractual duty arising under a 1974 construction contract obligating WMATA to avoid unreasonable delays in processing equitable adjustment claims, the breach of which would entitle the

**306**

contractor to an award of prejudgment interest?

(2) If a delay in processing an equitable adjustment claim does not justify an award of prejudgment interest under question (1), can section 15–109 of the D.C. Code furnish an independent basis for such an award?

(3) If prejudgment interest may be awarded pursuant to (1) or (2) above, does the trial court have discretion in limiting an interest award, or must the court as a matter of law either (i) award interest from the time that the claim is first submitted to WMATA or (ii) award interest only for the period of the unreasonable delay?

### III. CONCLUSION

We hereby certify the foregoing questions of law to the District of Columbia Court of Appeals. The mandate shall issue forthwith and shall serve as the "certification order" from this court. *See* D.C.CODE ANN. § 11–723(d). The Clerk of the Court shall forward copies of all or such portion of the record in this case as may be requested by the District of Columbia Court of Appeals. *See id.*

*So ordered.*