**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,**

**v.**

**NELLO L. TEER COMPANY, Appellee.**

**No. 90–SP–1516.**

District of Columbia Court of Appeals.

Argued June 25, 1991.
Decided Dec. 18, 1992.

Roy T. Englert, Jr., with whom Kenneth S. Geller, Toquyen T. Truong, Robert L. Polk, Arnold I. Melnick, and Thomas B. Dorrier, Washington, DC, were on the brief, for appellant.

Richard G. Mann, Jr., with whom John B. Tieder, Jr., Robert K. Cox, and Julian F. Hoffar, McLean, VA, were on the brief, for appellee.

Before TERRY, FARRELL and WAGNER, Associate Judges.

TERRY, Associate Judge:

This case presents three questions of District of Columbia law which have been certified to us under D.C.Code § 11–723 (1989) by the United States Court of Appeals for the District of Columbia Circuit. Among the issues raised in the appeal to the Circuit is whether there can be an implied contractual duty arising under a 1974 construction contract obligating the Washington Metropolitan Area Transit Authority (WMATA) to avoid unreasonable delays in processing "equitable adjustment" claims, the breach of which entitles an aggrieved contractor to pre-judgment interest on that adjustment. Noting that this was an unresolved issue of local law, the Circuit, following the procedures prescribed by D.C.Code § 11–723(c), issued an opinion setting forth the facts relevant to the questions certified and the nature of the controversy. *Nello L. Teer Co. v. WMATA,* 287 U.S.App.D.C. 260, 921 F.2d 300 (1990). We conclude, after reviewing pertinent statutes and case law, that any award of pre-judgment interest against WMATA in a case such as this is barred by District of Columbia law.

I

After competitive bidding, WMATA awarded a construction contract on May 7, 1974, to Nello L. Teer Company (Teer). The contract provided for the construction of the Clarendon subway station in Arlington, Virginia, at an estimated contract price of $29,664,702. The contract contained a clause providing for "equitable adjustments" whenever WMATA's modifications of the contract increased or decreased the contractor's performance cost. WMATA also agreed in the contract to obtain the required access easements before construction would begin.

Teer was advised to proceed with construction because all necessary permits and easements had been obtained, although in fact some of the easements had not been obtained by the time Teer was ready to begin work. Because of the easement problems, a design change had to be made, delaying the project by 194 days. All work under the contract was accepted as complete as of August 19, 1977.

Shortly thereafter, Teer sought equitable adjustments for seventeen claims, sixteen of which were eventually resolved. The seventeenth claim asserted that WMATA's delay in obtaining the necessary easements caused Teer to incur more than $8 million in additional costs. This claim was reviewed by a resident engineer, who recommended an adjustment of $592,814, representing costs that he found to be properly attributable to WMATA's delay. WMATA agreed with the recommendation and on November 16, 1979, adjusted the contract price by that amount. On December 4, 1979, Teer appealed this decision to the Board of Contract Appeals of the Army Corps of Engineers (the Board), which in due course held an evidentiary hearing.[1]

On September 30, 1986, five years after the evidentiary hearing and nearly seven years after the filing of the appeal, the Board issued its advisory opinion. By this

1. A clause in the contract "provides that contract disputes [must] be heard initially by the Board, which then issues an advisory opinion to the General Manager of WMATA. After reviewing the Board's opinion, the General Manager renders a final decision which is subject to judicial review in the United States district courts and the [state] courts of Maryland and Virginia." *Nello L. Teer Co. v. WMATA, supra,* 287 U.S.App.D.C. at 261 n. 1, 921 F.2d at 301 n. 1.

time Teer's claims had escalated to more than $12 million. The Board rejected the majority of these claims, making numerous findings of fact and concluding that the record demonstrated unmistakably that the delays were caused by events not attributable to WMATA. The Board specifically found incredible the testimony of Teer's consultant regarding the delays. The Board also found that "the Contracting Officer's unilateral adjustment here is at the lower end of the possible range" and therefore increased the equitable adjustment by $138,937. After observing that "[f]or many reasons, none of which can be ascribed to Teer, the disposition of this appeal has consumed an unusually long period of time," the Board awarded Teer an "additional profit" of $58,870. This amount was determined by calculating six percent of $138,937 per annum from the date the appeal was filed (December 4, 1979) until the date of the Board's decision (September 30, 1986). This "additional profit" award is the subject of the instant litigation.

The General Manager of WMATA, who had final decision-making power under the contract, substantially adopted the Board's advisory opinion, allowing the $138,937 increase in the equitable adjustment. She disallowed the "additional profit," however, after finding that the sum represented prejudgment interest and that WMATA, as "an interstate agency, formed by compact with congressional consent," was immune from such an award unless interest was specifically authorized by statute or by contract. Teer sought review of this decision in the United States District Court for the District of Columbia, challenging both the adequacy of the equitable adjustment and the General Manager's refusal to pay prejudgment interest on the Board's increase in the adjustment.

The District Court rejected Teer's challenge to the adequacy of the Board's

award, but held its ruling on the pre-judgment interest issue in abeyance pending the outcome of WMATA's petition for rehearing en banc in the United States Court of Appeals in a different case in which a Board award of pre-judgment interest had been upheld by the court. In that case, *General Railway Signal Co. v. WMATA*, 277 U.S.App.D.C. 287, 875 F.2d 320 (1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990) ("*GRS II*"), the court ruled that an equitable adjustment clause "imports into the contract a doctrine mandating a make-whole remedy that will restore a contractor to the contractor's prechange circumstances." *Id.* at 294, 875 F.2d at 327. Thus the *GRS II* court concluded that WMATA had waived its immunity from pre-judgment interest.

Five days after *GRS II* was decided, but before the District Court issued its decision in the instant case, this court held in yet another case that the term "equitable adjustment" in a 1968 contract to which the District of Columbia was a party was not meant to include the payment of interest for sums withheld for nearly ten years. *District of Columbia v. C.J. Langenfelder & Son, Inc.*, 558 A.2d 1155 (D.C.1989). The District Court, while acknowledging that the *Langenfelder* court had rejected the analysis of *GRS II*, nevertheless reversed the General Manager's decision and reinstated the Board's award of $58,870 in prejudgment interest, on the ground that interest may be awarded when there is an unreasonable delay in payment.

Both parties appealed from the decision of the District Court. After briefing and argument, the United States Court of Appeals for the District of Columbia Circuit found that the appeal "raises an unresolved question of local law" and certified three questions to this court.[2] *Nello L. Teer Co. v. WMATA, supra,* 287 U.S.App.D.C. at 261, 921 F.2d at 301. The certified questions are:

the compact and the state where the contract was performed, would preclude an award of interest under the circumstances presented here. *See, e.g., George Hyman Construction Co. v. WMATA,* 259 U.S.App.D.C. 449, 455–456, 816 F.2d 753, 759–760 (1987).

---

**2.** As the Circuit noted, it is unclear why District of Columbia law applies, but neither party objected to this choice of law, and the Circuit found no error in the choice made. *Nello L. Teer Co. v. WMATA, supra,* 287 U.S.App.D.C. at 262 n. 2, 921 F.2d at 302 n. 2. We note, however, that the law of Virginia, another signatory to

1. Under the law of the District of Columbia, can there be an implied contractual duty arising under a 1974 construction contract obligating WMATA to avoid unreasonable delays in processing equitable adjustment claims, the breach of which would entitle the contractor to an award of pre-judgment interest?

2. If a delay in processing an equitable adjustment claim does not justify an award of pre-judgment interest under question (1), can D.C.Code § 15–109 furnish an independent basis for such an award?

3. If pre-judgment interest may be awarded pursuant to issue (1) or (2), does the trial court have discretion in limiting an interest award, or must the court as a matter of law either (i) award interest from the time the claim is first submitted to WMATA or (ii) award interest only for the period of the unreasonable delay?

*Id.* at 265–266, 921 F.2d at 305–306. Because we answer the first two questions in the negative, we do not reach the third.

## II

■ At the outset, we note that Teer's claim against WMATA must be characterized as one which arises under the contract rather than one for breach of contract. Teer is attempting to enforce the contract provision for equitable adjustments. "When the contract makes provision for the equitable adjustment of particular claims, such claims may be regarded as converted from breach of contract claims to claims for relief under the contract." *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 404 n. 6, 86 S.Ct.

1545, 1552 n. 6, 16 L.Ed.2d 642 (1966); *Langenfelder, supra,* 558 A.2d at 1159; *District of Columbia v. Savoy Construction Co.,* 515 A.2d 698, 701–702 (D.C.1986). Therefore, the nature and scope of any relief to which Teer may be entitled are controlled by the contract itself. *Crown Coat Front Co. v. United States,* 386 U.S. 503, 511 (1967); *Langenfelder, supra,* 558 A.2d at 1159.

■ Also as a preliminary matter, we note that in this case the award of "additional profit" has been correctly interpreted as an award of pre-judgment interest. The Supreme Court has taught us that changing the terminology does not change the basic nature of an award, and that we must look to the nature of the award, rather than its label, in deciding whether it is allowable. Thus the Court has rejected awards of pre-judgment interest when a government contract required payment of "amount equitably due," *Tillson v. United States,* 100 U.S. 43, 46, 25 L.Ed. 543 (1879), "just compensation," *United States v. Alcea Band of Tillamooks,* 341 U.S. 48, 49, 71 S.Ct. 552, 552, 95 L.Ed. 738 (1951); *United States v. Thayer–West Point Hotel Co.,* 329 U.S. 585, 589, 67 S.Ct. 398, 400, 91 L.Ed. 521 (1947),[3] or "costs," *Library of Congress v. Shaw,* 478 U.S. 310, 321, 106 S.Ct. 2957, 2965, 92 L.Ed.2d 250 (1986).

Thus we are presented with the issue of whether pre-judgment interest can be awarded against WMATA under a 1974 contract, absent a specific contractual or statutory provision for such an award. We hold that it cannot.[4]

---

3. The Court has acknowledged a constitutional requirement for the government to pay interest as part of the just compensation payable for a taking under the Fifth Amendment. *Library of Congress v. Shaw, supra,* 478 U.S. at 316–317 n. 4, 106 S.Ct. at 2962 n. 4. In this case, however, there has been no "taking" in the constitutional sense.

4. The District of Columbia Circuit has previously held WMATA to be immune from suit because it was created by Congress, and because the signatories to the creating compact (Maryland, Virginia and the District of Columbia) "validly conferred [on it] the constitutional immunities they possess." *Morris v. WMATA,* 251

U.S.App.D.C. 42, 46, 781 F.2d 218, 222 (1986); *see also Dant v. District of Columbia,* 264 U.S.App.D.C. 284, 289, 829 F.2d 69, 74 (1987) (Congress "clothed WMATA with immunity from suit of the type [that] sovereigns enjoy"). Teer argues vigorously that WMATA's immunity has been nullified, or at least diminished, by the decision of the Supreme Court in *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). Whether *Loeffler* has any effect on WMATA's immunity is not within the scope of the certified questions, and hence we cannot and do not decide that issue. It is, in any event, an issue of federal rather than local law.

**132** 

## III

█ In *Langenfelder, supra,* this court was asked to decide whether, under the law of the District of Columbia, a contractor was entitled under a "changes" clause to recover interest for delays in the resolution of contract disputes with the government. The court held that the term "equitable adjustment" in a 1968 contract did not include the payment of interest on sums owed by the District to Langenfelder for costs incurred by Langenfelder in 1969 and 1970 but not paid to Langenfelder until 1980. Tracing the history of the long-standing prohibition against awards of pre-judgment interest against the government, the court observed that it was not until 1978 that Congress passed a statute which removed the former federal bar to claims for such interest.[5] The *Langenfelder* court concluded that a party "cannot claim the benefit of an albeit enlightened 1978 legislative change and the resulting judicial interpretations for construction of its 1968 contract." 558 A.2d at 1163. While acknowledging that "equity might mandate a different outcome," the court refused to grant interest for "delays in the resolution of contract disputes with the government." *Id.* at 1159. "This is not an equitable action; it is an action under the contract. Equitable considerations have no bearing upon the validity of the Board's determination [not to award interest]." *Id.* at 1163.

We conclude that the circumstances surrounding the formation of the Teer–WMATA contract in this case place it squarely within the boundaries of *Langenfelder.* In holding that a court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract, the *Langenfelder* court commented that it was without "roving discretion to reform the contracts of informed and sophisticated parties." *Id.* at 1163. Here, as in *Langenfelder,* there is no specific provision in the contract authorizing an award of interest, and the Contract Disputes Act, which eliminated the presumption against pre-judgment interest, had not yet been enacted when Teer and WMATA entered into their contract in 1974. *Langenfelder,* moreover, specifically rejected the argument that the plaintiff "was entitled to interest because it was deprived of the use of its money while the contract disputes mechanism ran its course" despite a long delay. *Id.* at 1161. Because "courts and administrative tribunals [in 1974] consistently construed interest claims against the contractor," *id.* at 1163, we conclude that the term "equitable adjustment" could not have encompassed a claim for interest such as that which Teer now advances. On the facts before us, we find *Langenfelder* controlling as to this issue.

The *Langenfelder* court found support for its position in the decisions of several federal courts. *Id.* at 1160. Federal precedents decisively reject the award of pre-judgment interest on an "unreasonable delay" theory. As WMATA points out, at least two Supreme Court decisions refer specifically to the "unreasonably delayed" status of government payments as an insufficient basis for an award of pre-judgment interest. *United States v. New York Rayon Importing Co.,* 329 U.S. 654, 660, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947); *Tillson v. United States, supra,* 100 U.S. at 47. Other courts likewise have refused to award pre-judgment interest based on delay, even lengthy delay, in payment by the government. *See United States v. James,* 301 F.Supp. 107, 132 (W.D.Tex.1969) ("It is axiomatic that interest on claims against the United States, even where payment has been unreasonably delayed, does not follow automatically upon the allowance of the claim"); *accord, Gray v. Dukedom Bank,* 216 F.2d 108, 110 (6th Cir.1954); *Muenich v. United States,* 410 F.Supp. 944, 947 (N.D.Ind.1976). In 1987 the United States Court of Appeals for the Federal Circuit denied interest on an equitable adjustment claim filed twenty years earlier, despite the acknowledged "harshness" resulting from the "time that the current case has been pending." *Gevyn Construction Corp. v. United States,* 827 F.2d 752, 754 (Fed.Cir. 1987).

5. This statute was the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988).

We conclude that under the law in effect during the making of a contract of this vintage, pre-judgment interest was unavailable unless a specific contract provision authorized it. The courts cannot circumvent the contractual limits by reading into a contract such as this one an implied promise to pay pre-judgment interest on the basis of "unreasonable administrative delay."

## IV

 We next consider whether D.C.Code § 15–109 affords an independent basis for an award of pre-judgment interest. Section 15–109 provides:

> In an action to recover for *breach of contract* the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. [Emphasis added.]

By its own terms, this statute is applicable only in breach of contract cases, whereas this case is one arising under the contract. *See Utah Construction & Mining Co., supra,* 384 U.S. at 404 n. 6, 86 S.Ct. at 1551 n. 6; *Langenfelder, supra,* 558 A.2d at 1159; *District of Columbia v. Savoy Construction Co., supra,* 515 A.2d at 701–702. The Supreme Court has rejected the notion that a claim based on the inadequacy of an equitable adjustment would be one for breach of contract. *See United States v. Utah Construction & Mining Co., supra,* 384 U.S. at 420, 86 S.Ct. at 1559 (labeling the refusal of an equitable adjustment as a breach of contract does not change the nature of the claim); *see also Morrison–Knudsen Co. v. United States,* 170 Ct.Cl. 757, 763, 345 F.2d 833, 837 (1965) (claim based on inadequacy of an equitable adjustment is not a claim for breach of contract).

Teer suggests that this court "has held in a number of decisions that Section 15–109 applies to actions other than breach of contract actions," citing *House of Wines, Inc. v. Sumter,* 510 A.2d 492 (D.C.1986), and *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543 (D.C.1981). Teer's reliance on those cases is misplaced. They hold only that section 15–109 can apply to breach of contract actions whether the agreement breached is implied or express; they do not address other types of actions. *House of Wines, supra,* 510 A.2d at 499; *Edmund J. Flynn Co., supra,* 431 A.2d at 548–550.

Because this is a case arising under the contract rather than an action for breach of contract, we conclude that D.C.Code § 15–109 is inapplicable and therefore cannot provide an independent basis for an award of pre-judgment interest.

## V

Finally, we have been asked to determine the period of time during which interest would accrue. Because there is no need to answer this question unless at least one of the first two certified questions is answered in the affirmative, and because we have answered both in the negative, we do not address the third question.

We hold that District of Columbia law will not support an award of pre-judgment interest based on any implied duty to avoid unreasonable delay in making an equitable adjustment to a pre–1978 government contract[6] unless the contract itself permits such an award. Nor, in the absence of a breach of contract, can D.C.Code § 15–109 be read to authorize such an award.

In accordance with D.C.Code § 11–723(g), the Clerk is directed to transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to each of the parties.

*It is so ordered.*

---

6. *I.e.,* a contract entered into before the effective date of the Contract Disputes Act of 1978, *supra* note 5.