**FAIRFAX VILLAGE CONDOMINIUM VIII UNIT OWNERS' ASSOCIATION,** Appellant,

v.

**FAIRFAX VILLAGE COMMUNITY ASSOCIATION, INC., Appellee.**

No. 97–CV–39.

District of Columbia Court of Appeals.

Argued Dec. 1, 1998.
Decided March 11, 1999.

Benny L. Kass, with whom Leslie A. Nettleford, Washington, DC, was on the brief, for appellant.

Kevin B. McParland, Bethesda, MD, for appellee.

Before STEADMAN, RUIZ and REID, Associate Judges.

STEADMAN, Associate Judge:

This appeal arises from a dispute between Fairfax Village Community Association, Inc. ("the Association") and one of its member communities, Fairfax Village Condominium

VIII Unit Owners' Association ("Village VIII"). The Association sued Village VIII for breaching its contractual duty to pay a share of the Association's expenses. Village VIII responded that the Association had not demonstrated how Village VIII "benefitted" from the expenses incurred as required by the contract language. The trial court found that Village VIII had breached its duty to pay, and that the Association had adequately satisfied its obligation to allocate expenses according to the benefits realized by member communities. We affirm.

## I.

The Association is an umbrella corporation organized under the District of Columbia Nonprofit Corporation Act. Village VIII is one of nine condominium regimes belonging to the Association. Each regime contracts with the Association by way of a Declaration that enumerates the responsibilities of each party. Member regimes are to pay a portion of the Association's expenses and participate in its governance, while the Association is required to provide a variety of services including ownership and maintenance of common grounds and procurement of management and maintenance contracts on behalf of its members. The Association is controlled by a Board of Directors that includes a representative of each member regime.

In 1990 or 1991, a budget committee designed a formula, which may more generally be characterized as a procedure or process of approach, to annually allocate the Association's budget among the nine members. The formula separates community expenditures not directly assignable to any single regime into several categories, such as administration, financial services, janitorial services, maintenance and contracts. Each member regime reimburses the Association for its share of expenses in each category. The latter four categories may contain expenditures assignable to more than one but not all member regimes, depending, for example, on

whether a regime is participating in a particular Association contract or service. The administration category, because it is made up of across-the-board items not assignable to any particular members, is allocated to each member community according to its total number of units.

This overall formula was accepted by the Board of Directors, with allowance for yearly modifications as necessary. At the time, Village VIII was a fully participating member of the Association and had a representative on the Board of Directors. The Declaration itself in its paragraph 18(D) requires that Village VIII "perpetuate the existence of the Community Association by actually participating in its management as a member in the manner prescribed." [1]

In April of 1993, as permitted by the Declaration, Village VIII rescinded the Association's authority to enter contracts on its behalf, but later clarified as to which of the current contracts it would continue participation. Village VIII further requested a detailed accounting of the expenses allocated to it, and stopped making any payments at all in March of 1994. Furthermore, since May 1994, Village VIII has failed to designate any individual as its representative to the Association or otherwise to participate in its management, notwithstanding the obligation under the Declaration. In March 1995, the Association brought suit to collect the unpaid portion of its expenses that it claims Village VIII owes under the Declaration.

## II.

The dispute between the parties turns on the application of Section 18(C)(4) of the Declaration, which reads:

All costs and expenses of Community Association not directly allocable to any specific horizontal property regime will be considered a community expense and will be allocated to each regime benefitted by

1. Paragraph 18(A) of the Declaration requires Village VIII "to designate one of the members of its Board of Directors to exercise all requisites of membership" in the Association on behalf of Village VIII and further provides that "the Condominium shall promptly cause its Board of Di-

rectors to designate its member representative" to the Association. Appellant's suggestion that this language does not require it to replace a member representative who has resigned is expressly contrary to the Association's Bylaws Article III(f).

the service or activity giving rise to such cost and expense, in the ratio of the number of Units in such regime to the total number of Units in Fairfax Village benefited [sic] by such service or activity.

Village VIII contends that the Association has failed to adequately demonstrate that Village VIII "benefitted" from any of the administrative expenses for which it was charged pursuant to the above language.[2] However, the trial court found, after a bench trial, that the formula used to allocate expenses among the member regimes was reasonable and that Village VIII had breached its contractual duty to pay its allocable share. Implicit in such a holding is a finding that the Association met its burden for allocating community costs according to the benefit received by Village VIII under the Declaration's § 18(C)(4).[3]

In our review of the trial court's construction of § 18(C)(4),

> we must ask first whether the meaning of the provision is plain on its face or whether it is ambiguous. *Sacks v. Rothberg*, 569 A.2d 150, 154 (D.C.1990). If the contract provision is ambiguous ... our review is limited. In such a case, the trial court will essentially have been acting as a finder of fact, *Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C.1988), and we will reverse only if the trial court's determination is 'plainly wrong or without evidence to support it.' D.C.Code § 17–305(a) (1989).

*Waverly Taylor, Inc. v. Polinger*, 583 A.2d 179, 182 (D.C.1990). Nothing in the clause specifies how benefits are to be determined, nor is the word "benefit" defined anywhere in the Declaration. Thus we turn to a review

of the record to determine if evidence sufficiently supports the trial court's finding.

"Where a contract is ambiguous, the trial court may, explicitly or implicitly, consider extrinsic evidence such as '. . . . the course of conduct of the parties under the contract.'" *Polinger, supra,* 583 A.2d at 182 (citation omitted); *see also District of Columbia v. C.J. Langenfelder & Son, Inc.,* 558 A.2d 1155, 1156 (D.C.1989) ("Contract terms must be construed according to their customary and common usage at the time when the parties executed the contract ...").[4] Indeed, with respect to an ambiguous contract, we have said that "considering the contract without taking into account the attendant circumstances and usages and the subsequent actions of the parties thereunder provided [the court] with an insufficient basis for interpreting the contract." *1901 Wyoming Avenue Co-op. Ass'n v. Lee,* 345 A.2d 456, 462 (D.C. 1975).

In this case, the parties operated for several years under the same formula for allocation of costs under the provision of 18(C)(4), creating a course of conduct that informs the meaning of the contract language. The Association and its members were cognizant from the beginning that it would be impracticable to demand that an explanation of the benefits to each member accompany each and every payment made by the Association in the execution of its regular duties. Some expenses would presumably be shared by all the membership. At the same time, other expenses in any given year would be reasonably allocable to particular member regimes.

The Board developed what the trial court deemed a reasonable procedure to this end

---

2. At oral argument, appellant clarified that its dispute with the Association turns essentially upon justification of the portion of the administrative expenses allocated to it, and not the other categories.

3. More precisely put, with respect to the administrative expenses, which were allocated among all nine member regimes according to the number of units, that the benefits could be reasonably so attributed.

4. "Of course, [t]he endeavor to ascertain what a reasonable person in the position of the parties would have thought the words of a contract

meant applies whether the language is ambiguous or not," *Sagalyn v. Foundation for Preservation of Historic Georgetown,* 691 A.2d 107, 112 n. 8 (D.C.1997), and in determining what a reasonable person in the position of the parties intended, "we consider that the reasonable person is: (1) presumed to know the circumstances surrounding the making of the contract; and (2) bound by the usages of the term which either party knows or has reason to know and the course of conduct of the parties." *Id.* (citing *Intercounty Construction Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982)).

when it designed the expense allocation formula. Village VIII took part in the formula's creation and could continue to participate in its application, through representation on the Board, which annually approved the Association's budget, including its administrative expenses. Village VIII voluntarily gave up that opportunity when it failed in its duty to appoint such a representative. It does not appear that the nature of the overall formula itself was changed from prior years.

Under these circumstances, the expenses allocated by the formula can be deemed prima facie valid, and the burden shifted to an individual Village to assert and establish the absence of benefit of any particular charge allocated to it. A Village cannot simply refuse on a blanket basis to pay any portion of the allocated costs, particularly where, by its own failure to participate in the management of the Association, its alleged lack of information is to a considerable degree a self-inflicted wound.

Here the Association presented the trial court with a quite detailed explanation of its financial operations and the allocation of expenses. After a full trial with witnesses from both sides, the court ruled that the contract had been breached by Village VIII. We are simply not persuaded that this judgment was either "plainly wrong or without evidence to support it." D.C.Code § 17–305(a).

*Affirmed.*