2001 WY 47

Gabrielle Manigault BOLEY; Edwin L. "Tooter" Rogers and Elizabeth Josephine Rogers, husband and wife; and Fred L. Oedekoven and Mary Ann Oedekoven, Trustees of the Fred and Mary Oedekoven Family Trust dated September 12, 1995, Appellants (Defendants),

v.

Douglas C. GREENOUGH; Gary F. Greenough; Jess S. Greenough; Michael W. Greenough; Patrick B. Greenough; Myrtle A. Wallis; and Kathryn M. York, Appellees (Plaintiffs).

No. 99–299.

Supreme Court of Wyoming.

May 11, 2001.*

---

* This case was originally assigned to Justice Thomas on August 21, 2000, for the rendering of a proffered majority opinion. The case was reassigned to Justice Kite on February 5, 2001.

Representing Appellants: John M. Daly and Patrick G. Davidson of Daly Law Associates, P.C., Gillette, WY.

Representing Appellees: Haultain E. Corbett and Dan B. Riggs of Lonabaugh and Riggs, Sheridan, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

KITE, Justice.

[¶ 1] When oil was discovered on ranch property owned by Frank and Doris Greenough (the Greenoughs), they sought to share that benefit by conveying royalty interests to their children. The resulting seventy-seven separate assignments each used the terms "royalty interest" and "over-riding royalty," *inter alia*, in reference to the nature of the interest transferred. Thirty years later, subsequent purchasers of various tracts in the ranch property disputed the Greenough children's royalty interests. They claimed the interests assigned were not perpetual nonparticipating royalty interests. The appellants relied exclusively on the use of the term "over-riding royalty" in the assignment documents and the contemporary definition of that technical term to contend

the assignments transferred only an overriding royalty on leases in existence at the time of the conveyance. They argued the assignments were void, *ab initio,* because the Greenoughs held no leaseholds or overriding interests at the time of conveyance and, therefore, had nothing to convey. The district court entered summary judgment in favor of the Greenough children. We affirm because the assignments, on their face, permit no other interpretation than that which passes perpetual nonparticipating royalty interests.

## ISSUES

[¶ 2] The appellants articulate three issues:

1. Did the District Court err in determining that the Greenoughs' Assignments of Royalty conveyed a perpetual royalty interest to the Appellees?

2. Did the District Court err in determining that the Greenoughs' Assignments of Royalty were doubtful and uncertain, so as to allow the extrinsic evidence as to the intent of the Greenoughs in making their assignments?

3. Did the District Court err in granting the Plaintiffs' (Appellees') Motion for Summary Judgment?

The appellees state essentially the same issues:

A. Did the trial court correctly rule that the Assignments of Royalty conveyed perpetual royalty interests that were applicable to existing and subsequent leases of the underlying mineral estate?

B. Was the trial court correct in considering extrinsic evidence as to the facts and circumstances surrounding the execution of the Assignments of Royalty?

C. Did the trial court correctly rule that there were no genuine issues as to material fact and that the interpretation of the Assignments of Royalty was a question of law for the court to decide?

## FACTS

[¶ 3] In the 1960s, the Greenoughs owned a fee interest in surface and mineral rights to approximately one hundred sections of land in northern Campbell County near Recluse. In 1967, a commercial quantity of oil was discovered on the Greenough ranch. Between November 28, 1967, and January 15, 1969, the Greenoughs executed and delivered to their children, the appellees, seventy-seven different documents, each entitled "Assignment of Royalty."

[¶ 4] Each assignment recites that the consideration therefor is the "[l]ove and affection" of the receiving child, and each assignment specifies that it "is intended as a gift" for that named child. Each assignment further recites that the Greenoughs

> do hereby SELL, ASSIGN, SET OVER, TRANSFER and CONVEY ... all right title and interest in, of and to Percent ( %) of all the oil, gas and other hydrocarbon substances produced and saved from the following described lands....

Each assignment is for either one-half of one percent or one percent of the oil, gas, and other hydrocarbons produced from one of eleven tracts of land within the Greenough ranch. The net effect of those seventy-seven separate documents was to convey to each of the Greenough children a shared seven percent interest in the oil produced from some of those eleven tracts and a three and a half percent interest in the remaining tracts. Each habendum clause is identical:

> TO HAVE AND TO HOLD said royalty interest unto said assignee, [his] heirs, successors and assigns as above set forth; the said oil, gas and other hydrocarbon substances so produced and saved from said land to be delivered free of cost to assignee, his successors or assigns, in the pipe line or pipe lines serving said premises or into tanks erected for the purpose of storing said products, together with the rights, privileges and benefits derived therefrom. Assignors covenant and agree that they have lawful right to sell and convey said royalty, and that they will warrant and defend the title to the same.

Each assignment also contains the following language: "This is an OVER–RIDING royalty conveyed by assignors and accepted by assignee subject to the terms of the lease, ·leases, operating agreement and operating

agreements now held by assignors covering said lands."

[¶ 5] Notwithstanding the foregoing language, the parties agree that the Greenoughs did not own leasehold interests in any of the lands described in the assignments and did not possess overriding royalty interests in any of the lands. Nor did they possess any overriding royalty interests as a lessee.

[¶ 6] In 1974, the Greenoughs sold their ranch to the TR Ranch Limited Liability Company (TR Ranch), reserving certain mineral interests but conveying the remainder to the purchaser. It is not contested that the Greenough children's interests were recorded or that those children received royalty payments from all the lands covered by the assignments from 1967 to 1998 because of the assignments. Nothing in the record suggests that either the parents or the children questioned the nature or scope of the royalty interest granted during the thirty-one years after the assignments were made. In 1995, TR Ranch conveyed portions of the ranch to Edwin and Elizabeth Rogers. In 1996, TR Ranch conveyed the balance of the ranch to Gabrielle Manigault Boley who, in turn, conveyed a portion of the land to the Oedekoven Trust. Each of the foregoing transactions conveyed lands burdened by the assignments.

[¶ 7] In early 1998, the Boley No. 31–36 Well was drilled and completed. A portion of the spacing unit for this well was subject to the Greenough children's assignments. The well operator obtained a Drilling Title Opinion and a Division Order Title Opinion, both of which concluded the author could not determine whether the assignments to the Greenough children were intended to be perpetual royalty interests or were limited to any oil and gas leases in effect at the time of the assignments. The operator was thus advised to hold royalties in suspense pending resolution of the meaning of the assignments.

[¶ 8] Faced with the first interruption of royalty payments in thirty years, the Greenough children sought a declaratory judgment as to their interests in production from the lands subject to the assignments. They bolstered their position with their own affidavits in addition to affidavits from their moth-er (their father had died in the interim) and the attorney who drafted the assignments, which provided some factual background for the assignments and the subjective intent of the assignors to pass perpetual nonparticipating royalties to the children. The appellants, however, took the position that, because the assignments used the term "overriding royalty" and the Greenoughs held neither leaseholds nor overriding royalty interests in any of the subject lands, the assignments were, as a matter of law, either limited to any leases that were outstanding at the time or void, *ab initio.*

[¶ 9] The district court found the assignments were intended to transfer perpetual royalty interests in the described lands which were not limited to the duration of any particular lease but instead were applicable to existing and subsequent leases of the underlying mineral interests. This appeal timely followed.

## STANDARD OF REVIEW

[¶ 10] This court has concisely stated the standard of review for summary judgment in contract litigation as follows:

A summary judgment is appropriate in litigation when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. In contract litigation, when the terms of the agreement are unambiguous, the interpretation is a question of law, and a summary judgment is appropriate because there is no genuine issue of material fact. Whether a contract is ambiguous is a question of law for the reviewing court. We review questions of law de novo without affording deference to the decision of the district court.

According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. In the absence of any ambiguity, the contract will be enforced accord-

ing to its terms because no construction is appropriate.

*Amoco Production Company v. EM Nominee Partnership Company,* 2 P.3d 534, 539–40 (Wyo.2000) (citations omitted); *see also Burbank v. Wyodak Resources Development Corp.,* 11 P.3d 943, 946–47 (Wyo.2000).

[¶ 11] Assignments are contracts and are construed according to the rules of contract interpretation. *Wolter v. Equitable Resources Energy Company, Western Region,* 979 P.2d 948, 951 (Wyo.1999). The determination of the parties' intent is our prime focus in interpreting or construing a contract. *Id.* If an agreement is in writing and its language is clear and unambiguous, the parties' intention is to be secured from the words of the agreement. *Id.; Moncrief v. Louisiana Land and Exploration Company,* 861 P.2d 516, 524 (Wyo.1993). When the agreement's language is clear and unambiguous, we consider the writing as a whole, taking into account relationships between various parts. *Moncrief,* 861 P.2d at 524. In interpreting unambiguous contracts involving mineral interests, we have consistently looked to surrounding circumstances, facts showing the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract. *Cheyenne Mining and Uranium Company v. Federal Resources Corporation,* 694 P.2d 65, 70 (Wyo.1985); *Dawson v. Meike,* 508 P.2d 15, 18 (Wyo.1973).

## DISCUSSION

[¶ 12] As an initial matter, we note both parties requested summary judgment and contended that no material issues of fact existed to be tried. The appellants do object to the affidavits as extrinsic evidence purporting to provide the grantors' subjective intent at the time of the assignments. The record indicates the district court did not rely on the affidavits finding them self-serving, judgmental, and not entitled to much weight. We conclude the assignments are unambiguous on their face and consideration of the affidavits would have been, therefore, inappropriate.

[¶ 13] The parties agree that, when the Greenoughs made the assignments which are the subject of this appeal, they owned in fee approximately 64,000 acres of surface and mineral estates, although they did not specifically possess leaseholds or overriding royalties. The assignments were made immediately after the first discovery of oil and gas on the lands and had the stated purpose of providing the grantors' children with a gift. At the time of the assignments, a portion of the lands was subject to leases. The record does not contain sufficient evidence to determine the exact extent, terms, and expiration dates of the multitude of leases that have existed on this property. Given the size of the ranch and the extent of oil and gas activity over thirty years, it is safe to presume that some leases were held by production and others expired by their terms with new leases being issued. The children continued to receive royalty ·payments on all leases.

[¶ 14] Examination of the language employed in the assignments offers guidance as to the appropriate interpretation. Each assignment purports to transfer a percentage of "all the oil, gas and other hydrocarbon substances produced and saved from the ... described lands." We have construed instruments which employ the language "oil and gas produced and saved" as creating a nonparticipating royalty interest. *Ferguson v. Coronado Oil Company,* 884 P.2d 971, 977 (Wyo.1994) (citing 1 Eugene Kuntz, The Law of Oil and Gas § 16.2 (1987)).

> "The distinguishing characteristics of a non-participating royalty interest are: (1) Such share of production is not chargeable with any of the costs of discovery and production; (2) the owner has no right to do any act or thing to discover and produce the oil and gas; (3) the owner has no right to grant leases; and (4) the owner has no right to receive bonuses or delay rentals."

*Picard v. Richards,* 366 P.2d 119, 122 (Wyo. 1961) (quoting *Mounger v. Pittman,* 235 Miss. 85, 108 So.2d 565, 566 (1959)).

[¶ 15] Central to our interpretation of the questioned assignments is the

Greenoughs' fee ownership of the surface and mineral rights at the time the assignments were made. We have consistently treated a mineral fee as being in the nature of a bundle of rights or incidents which may be granted or reserved. Silas R. Lyman, Note, *Creation of Royalties Prior to Leasing*, 13 Wyo. L.J. 244, 246–47 (1959) (citing *Denver Joint Stock Land Bank of Denver v. Dixon*, 57 Wyo. 523, 122 P.2d 842 (1942)). Fee owners, such as the Greenoughs, have the capacity to create and convey any one or all of a myriad of separately identifiable interests in oil and gas under their property, including royalty interests. *Williams v. Watt*, 668 P.2d 620, 624 (Wyo.1983); *Bensinger v. Scott*, 625 P.2d 775, 777 (Wyo.1981). Such royalty interests may be created for years, for life, or in fee. *Williams*, 668 P.2d at 624 (citing 1A W.L. Summers, The Law of Oil and Gas § 136 (1954)). "It is also observed that a right to royalty may be reserved or granted before any mineral lease is executed, and such right is generally termed a 'perpetual nonparticipating royalty', where no right is granted or reserved to participate in making future leases." *Oregon Basin Oil & Gas Co. v. Ohio Oil Co.*, 70 Wyo. 263, 275, 248 P.2d 198, 203 (1952). The fact the Greenoughs may have already leased some of the parcels to third parties at the time of the assignments is no impediment to interpretation of those assignments as conveying perpetual nonparticipating royalties. "A perpetual nonparticipating royalty may be created by grant or reservation after and subject to an existing oil and gas lease." 3A W.L. Summers, The Law of Oil and Gas § 599 at 238 (1958).

▇ [¶ 16] Reservation or grant of a royalty interest prior to the lease of the subject property "is generally termed a perpetual nonparticipating royalty, if no right is granted or reserved to participate in the making of future leases." *Dixon*, 122 P.2d at 844. It is clear from the "heirs, successors and assigns" language in the habendum clauses of the assignments that the Greenoughs were creating perpetual nonparticipating royalties as opposed to a life estate or a term of years. The assignments were recorded, and the appellants do not claim they took the property without notice of the rights of the appellees to nonparticipating royalties.

▇ [¶ 17] The question remains whether use of the term "over-riding royalty" in one clause is so contrary to our interpretation of the balance of the assignment language as to render those assignments void. At least one commentator has asserted "[t]he rights created by the parties, not the name, nor an occasional inadvertent or malapros phrase, establishes what it is." John D. Lawyer, *Fee Royalty Conveyancing in Wyoming*, 2 Land & Water L.Rev. 117, 122 (1967) (citing *Picard*, 366 P.2d at 123). The interpretation urged by the appellants would render meaningless the conveyance clause which granted "all right, title and interest" in a certain percentage of all oil and gas produced from all the described lands without any limitation to particular leases.

▇ [¶ 18] "[N]o single provision taken alone, much less a single c[l]ause in a sentence, has controlling effect. [The court] must consider and give effect to all the provisions of the contract so that none will be rendered meaningless." *West Texas Utilities Co. v. Exxon Coal USA, Inc.*, 807 P.2d 932, 936 (Wyo.1991). In *West Texas Utilities Co.*, this court rejected a similar argument which urged the application of a single remedy clause in such a manner as to abrogate a twenty-year coal supply contract. The court recognized such a result was contrary to the parties' intent as determined from the contract and the surrounding circumstances. We follow a similar course here and give effect to the grantors' obvious intent to assign a perpetual nonparticipating royalty interest in all the lands covered by the assignment.

▇ [¶ 19] "As a general rule, words in a contract will be given their usual and primary meaning at the time of the execution of the contract. The foregoing rule applies to technical words in a contract and the meaning of such words must be construed as of the date of the execution of the contract." *Oresta v. Romano Bros.*, 137 W.Va. 633, 73 S.E.2d 622, 628 (1952) (citation omitted); *see also Fairfax Village Condominium VIII Unit Owners' Association v. Fairfax Village Community Association, Inc.*, 726 A.2d 675,

677 (D.C.1999); 17A Am.Jur.2d *Contracts* § 359 (1991). In this context, the term "over-riding royalty" need not be interpreted as limiting the effect of this assignment.

The term "overriding royalty" has been defined in numerous judicial opinions as an interest in oil and gas production at the surface, free of the expense of production, and in addition to the usual land owner's royalty reserved to the lessor in an oil and gas lease. As stated in 2 Williams and Meyers, Oil and Gas Law, § 418.1, p. 341: "An overriding interest is, first and foremost, a 'royalty interest.'" *Cities Service Oil Company v. Pubco Petroleum Corporation,* 497 P.2d 1368, 1372 (Wyo. 1972) (footnote omitted); *see also Connaghan v. Eighty–Eight Oil Company,* 750 P.2d 1321, 1324 (Wyo.1988).

[¶ 20] Over time, the use of the term "overriding royalty" has evolved and has more recently been used to describe an interest carved out of the lessee's share of the oil and gas. Howard R. Williams & Charles J. Meyers, Manual of Oil and Gas Terms at 750 (10th ed.1997). A discussion of the evolution of the term is contained in the Manual of Oil and Gas Terms and confirms that, during the time frame these assignments were executed, "overriding royalty" was also used to indicate a nonparticipating royalty and "added nothing to the meaning of the term 'royalty.'" *Id.,* at 749. Recent treatises continue to use the phrase to apply to nonparticipating royalties:

> Perhaps the only safe way to define the term "overriding royalty" is to say that it is a fractional interest in the gross production of oil and gas, in addition to the usual royalties paid to the lessor. The term may be used in referring to a nonparticipating royalty interest in perpetuity or for a term of years created by the land or mineral owner prior to a lease for oil and gas.

3 W.L. Summers, The Law of Oil and Gas § 554 at 624 (1958).

[¶ 21] The record in this case confirms that operators used the term in such a fashion during the same time period as the assignments were executed. One of the leases from the Greenoughs to Phillips Petroleum Company, dated September 21, 1967, re-served the usual one-eighth royalty and an additional four percent "overriding royalty" to the lessors. Consequently, it is reasonable to construe the term in this assignment in a manner which gives effect to the obvious intent of the parties and is consistent with the remaining language of the instrument.

[¶ 22] In 1989, the legislature weighed in on the issue, defining "overriding royalty" as "a share of production, free of the costs of production, carved out of the lessee's interest under an oil and gas lease." Wyo. Stat. Ann. § 30–5–304(a)(v) (Lexis 1999); 1989 Wyo. Sess. Laws ch. 255, § 1. The appellants point to Wyoming's statutory definition of the term overriding royalty for the proposition that the assignment did not convey a perpetual royalty on all lands. We conclude, in the limited context of the specific facts of this case, the statute, enacted over twenty years after the assignments were executed, is of little help in determining the parties' intent. The Greenoughs, being possessed of a fee estate, could convey any portion thereof as they saw fit.

### CONCLUSION

[¶ 23] The seventy-seven assignments giving rise to this appeal are unambiguous assignments of perpetual nonparticipating royalties to the appellees. The fact that the Greenoughs were neither leaseholders nor overriding royalty holders at the time of assignment does not serve to void the assignments. Being the fee owners of the estate in question, the Greenoughs could convey as little or as much thereof to their children as they saw fit. Use of the term "over-riding royalty" in one clause of the documents did not preclude the creation of nonparticipating royalty interests in perpetuity to the benefit of their children. For these reasons, summary judgment for the appellees is affirmed.